THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH A. FITZGERALD, Appellant, *v.* JOHN R. VOORHIS et al., Constituting the Board of Elections of the City of New York, Respondents.

**Election — special election to fill vacancy in office of member of Congress — such election must be held in district as it exists when election is ordered.**

Where a special election is called to fill a vacancy caused by the resignation of a member of Congress, it must be held in the district as it exists when the governor issues the proclamation therefor.

*People ex rel. Fitzgerald* v. *Voorhis,* 182 App. Div. ——, affirmed.

(Argued February 12, 1918; decided February 15, 1918.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered February 9, 1918, which affirmed an order of Special Term denying an application for an order restraining the board of elections of the city of New York from holding a special election in the seventh congressional district, as fixed by chapter 797, of the Laws of 1917, to fill the vacancy therein existing

and for a peremptory writ of mandamus directing such board to hold such election in the seventh congressional district as fixed by chapter 890 of the Laws of 1911.

The facts, so far as material, are stated in the opinion.

*James D. Bell* for appellant. The true meaning of chapter 797 of the Laws of 1917 is that it is applicable to election to future Congresses and not to the filling of vacancies in the present Congress. (*Hopper* v. *Britt*, 203 N. Y. 144; *Ex parte Yarbrough*, 110 U. S. 654; *Ex parte Siebold*, 100 U. S. 371; *McPherson* v. *Blacker*, 146 U. S. 1.)

*William P. Burr, Corporation Counsel* (*William B. Carswell* of counsel), for respondents.

*Merton E. Lewis, Attorney-General* (*Alfred L. Becker* and *Samuel A. Berger* of counsel), for the People of the State of New York. The legislature has abolished not only the old seventh and eighth congressional districts, but also all the election machinery essential to the holding of an election in such old districts. The court has no power to order either to be reconstituted. (*Gough* v. *Satterlee*, 32 App. Div. 33; *Campbell* v. *Consalus*, 25 N. Y. 613; *Clapp* v. *Guy*, 31 App. Div. 535; *People ex rel. Broderick* v. *Morton*, 156 N. Y. 136; *Matter of Guden*, 171 N. Y. 529; *Ely* v. *Holton*, 15 N. Y. 595; *McPherson* v. *Blacker*, 146 U. S. 1.)

*Meier Steinbrink* for Wilmot L. Morehouse et al., intervening. The court is without power to deal with the subject-matter of the controversy here presented. (*Richardson* v. *McChesney*, 128 Ky. 363.)

McLAUGHLIN, J. At the general election held November 7, 1916, John J. Fitzgerald was elected a representative from the seventh congressional district of the

state of New York to the sixty-fifth Congress of the United States. The boundaries of such district at that time were fixed and established by chapter 890 of the Laws of 1911. On the 1st of January, 1918, he resigned and a vacancy was thereby created, which now exists. Intermediate his election and resignation the legislature of the state of New York, by an act which took effect June 9, 1917, changed the boundaries of some of its congressional districts, and among others, the seventh. (Laws of 1917, chap. 797.) The governor of the state of New York, on the 23d of January, 1918, pursuant to the Federal Constitution (Article 1, sec. 2, clause 4) and section 292 of the Election Law (Laws of 1909, chap. 22, as amended by Laws of 1911, chap. 891) by proclamation duly issued, ordered that a special election be held on the 5th day of March, 1918, in the seventh congressional district, to fill such vacancy.

The question presented by the appeal is whether the election thus called is to be held in the seventh congressional district as it existed when Mr. Fitzgerald was elected or as it existed when the governor issued his proclamation. There is, as it seems to me, if the election is to be held at all, but one answer to the question.

The Federal Constitution provides that "The House of Representatives shall be composed of members chosen every second year by the people of the several States." (Article 1, sec. 2, clause 1.) The third clause of the same section, as amended by the Fourteenth Amendment, provides that "Representatives · * * * shall be apportioned among the several States * * * according to their respective Numbers" excluding certain persons named. And section 4, clause 1 of the article provides: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter

such Regulations, except as to the Places of choosing Senators." Pursuant to these provisions, Congress, on the 8th of August, 1911, passed an act (Chap. 5 of the Sixty-second Congress) reapportioning the number of representatives among the different states. That act provided that "after the 3rd day of March, 1913, the House of Representatives shall be composed of four hundred and thirty-three members to be apportioned among the several States as follows: · * * * New York forty-three * * *." Section 3 of the act provides: "That in each State entitled under this apportionment to more than one representative, the representatives to the sixty-third and each subsequent Congress shall be elected by districts composed of a contiguous and compact territory and containing as nearly as practicable an equal ᵢnumber of inhabitants."

After the apportionment thus made it at once became and thereafter continued to be the duty of the legislature of the state of New York to comply with the act by dividing the state into forty-three congressional districts in the manner prescribed. This it did by the act of 1911, but its power was not thereby exhausted nor its duty fully performed. It still remained obligated to keep the state so divided into congressional districts that members thereafter elected should be from districts composed of contiguous and compact territory containing as nearly as practicable an equal number of inhabitants. The language used in the congressional act indicates as clearly as anything can that Congress in its enactment took into consideration the fact that after a state had once been divided into congressional districts, by reason of shifting population, it might, from time to time, become necessary to redistrict it in order fully to comply with the intent and purpose of the act. The division directed to be made was not only for the sixty-third,

32

but " each subsequent Congress." It· is not claimed, nor suggested, that the seventh district as established by chapter 797 of the Laws of 1917, is not composed of contiguous and compact territory; or that it does not contain as nearly as practicable ·an equal number of inhabitants with the other districts of the state. The ·purpose of the legislature in passing that act, it must be assumed, was solely to comply with the act of Congress.

It is not claimed that the legislature had the power to make the seventh congressional district a migratory one so that Mr. Fitzgerald " would be representing during his term various parts of the state according to the will of the legislature." All that is claimed is that the legislature had the power given to it by Congress to divide the state into forty-three congressional districts composed of a contiguous and compact territory and containing as nearly as practicable an equal number of inhabitants. In the exercise of the power thus given the act of 1917 was passed. The act took effect immediately and thereafter the new seventh congressional district took the place of the old one. Once the old one had ceased to exist the governor was powerless to issue his writ for an election therein. In my opinion the act of 1917 is a valid legislative enactment.

The ingenious and forceful contention of the appellant that the election should be held in the old district is easily answered. There is now no such district in existence. The act of 1917 created a new district consisting of part of the old and some new territory. The title to the act is: " An Act to amend chapter eight hundred and ninety of the laws of nineteen hundred and eleven, entitled ' An Act dividing the state into congressional districts,' in relation to changing the boundaries of the congressional districts of the state from the third district to the tenth district, both inclusive." And section 5 provides: " That portion of section one of such act

describing the boundaries of the seventh congressional district is hereby amended so that the boundaries of the seventh congressional district shall be established and fixed as follows." Then follow the boundaries of the territory taken in. The effect of this amendment was to repeal or supersede, as to the territory left out and the new territory taken in, the act of 1911, bounding the seventh congressional district. (*Ely* v. *Holton*, 15 N. Y. 595; *Matter of Livingston Street*, 82 N. Y. 621, 623; *Matter of Estate of Prime*, 136 N. Y. 347; 36 Cyc. 1083.) An election cannot now be held in the old district because, as indicated, it does not exist and, in addition thereto, there are no facilities, including proper election officials, necessary for holding an election. The election, therefore, must be held in the new district or else the state must go unrepresented in Congress so far as that district is concerned — a result which we are all agreed should be avoided if possible. In this connection it is suggested that if a member be elected from the new district, he may not be permitted to take his seat in Congress. That is a matter solely for the determination of Congress itself. It is the sole judge of the qualification of its members and its action can in no way be controlled by this court.

The proclamation of the governor was issued by him in obedience to the commands of the Federal Constitution, which provides: " When vacancies happen in the Representation from any State, the Executive Authority thereof shall issue Writs of Election to fill such Vacancies." (Article 1, sec. 2, clause 4.) The only basis for holding the special election is the governor's proclamation. Whether a special election of the character of the one under consideration shall be held, and if so when, involves a matter of executive discretion with which the courts have no right or power to interfere. (*People ex rel. Broderick* v. *Morton*, 156 N. Y. 136;

*Matter of Guden*, 171 N. Y. 529.) The proclamation as issued calls for a special election in the seventh congressional district as it now exists. It provides that the election must be held in the manner prescribed by law for the election of representatives to Congress at general elections. This must mean, as it seems to me, in the manner prescribed by the act of 1911, as amended by the act of 1917. That which is prescribed by law means that which is prescribed by an existing law and not by a law which has ceased to exist.

My conclusion, therefore, is that the court is without power to direct a special election to be held in the old district and that the proclamation of the governor calls for a special election to be held in the new district.

It follows that the order appealed from is right and should be affirmed, with costs.

HOGAN, J. (dissenting). The fundamental question involved in this appeal is the validity of the act of the Legislature, chapter 797, Laws of 1917.

My views are at variance with the conclusion stated in the prevailing opinion, that the Legislature of this State when it enacted chapter 890, Laws of 1911, redistricting the State, immediately following an apportionment made by the Congress August 8th, the same year, failed to fully perform a duty imposed upon it by the Congress, in that a continuous obligation rested upon the Legislature to keep the State so divided into Congressional Districts that Representatives to the Congress thereafter elected should be from districts composed of contiguous territory containing as nearly as practicable an equal number of inhabitants, and with the construction placed upon the act of Congress of August 8, 1911, in support of such conclusion.

The law of 1911 is not, and has not been assailed as invalid either as to the districts defined, equality in

number of inhabitants or for any reason. The law of 1911 was in substance the same in character as the statutes enacted by the Legislatures of this State since 1842, each statute following an apportionment by Congress based upon a decennial census of the inhabitants of the State. During that period the Legislature of this State has numbered amongst its membership a fair proportion of able lawyers, each of whom it is fair to assume was interested in the Congressional District of which he was a resident, as well as in the success of the political party with which he was affiliated. The Session Laws of this State during the years stated disclose that the State was redistricted by the Legislature once in ten years, following immediately each apportionment by the Congress. Evidently during all the years, the legislative bodies of this State while giving such practical and reasonable construction to the authority vested in them by the Congress did not appreciate the now established fact that they failed to fully perform a continuous obligation imposed upon them by the Congress to keep the State divided into Congressional Districts, the only limitation being that the rule as to territory and inhabitants should not be disregarded. In support of the conclusion as to the continuous obligation resting upon the Legislature, the prevailing opinion, referring to the act of Congress of 1911, declares that Congress in its enactment took into consideration the fact that after a State had once been divided into Congressional Districts by reason of shifting population it might from time to time become necessary to redistrict it in order fully to comply with the intent and purposes of the act, as the division directed to be made was not only for the sixty-third, but " each subsequent Congress." In other words, year by year following a redistricting of the Congressional Districts the Legislature is authorized to again redistrict by reason of shifting population. The inquiry is per-

tinent: How will the " shifting population " be ascertained? It is obligatory that districts shall contain as nearly as practicable an equal number of inhabitants. Shifting in population occurs annually in every district and the only manner in which the population can be ascertained every year or every two years is by an enumeration of the inhabitants of the State. I am loath to believe that the Congress had in mind the imposition of such an unnecessary burden and extraordinary expenditure of money by the State. On the contrary, its expressed intention was otherwise. I do not understand that any division of opinion exists that the Federal Constitution which provides for a Congress, the term of office of Representatives therein, the qualifications requisite to holding the office and the qualification of electors to vote for them, the number of Representatives, the method of apportionment of the same, and, as a prerequisite to such apportionment the return of a decennial census of the stated inhabitants of the various States, is supreme. The only authority ever granted by the Federal Constitution to the States is found in article 1, section 4, subdivision 1, which reads: " The Times, Places and Manner of holding elections for Senators and Representatives shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by law make or alter such regulations, except as to the places of choosing Senators."

Under that provision of the Constitution, each State was for a certain time permitted to elect Representatives either at large or by districts. In this State from the earliest day, Representatives were elected by districts. The above provision of the Federal Constitution reserved to the Congress the right at any time by law to make or alter any regulation made by the States as to the times, places and manner of holding elections for Representatives. In the exercise of such reserved power, the Congress imme-

diately following the return of the census of 1840, enacted chapter 47 of the statutes of 1842, and provided therein " That in every case where a State is entitled to more than one Representative, the number to which each State shall be entitled under this apportionment shall be elected by districts composed of contiguous territory equal in number to the number of Representatives to which the State may be entitled, no one district electing more than one Representative." The purpose of that law was to provide for uniformity amongst the States as to the manner in which Representatives should be elected and to avoid " an undue preponderance of power to the political party which had a majority of votes in the State however small." (*Ex parte Yarbrough*, 110 U. S. 651, 660.)

The enactment by the Congress in the law of 1842 deprived the States of the right to regulate the " manner " in which Representatives should be elected, and likewise provided the " places," *i. e.*, districts, from which they should be elected. Later Congress denied to the States the power to fix the " times " of holding elections and by virtue of its reserved power enacted that Representatives from the States and Territories should be elected on the Tuesday after the first Monday in November, 1876, and every second year thereafter. The purpose of that law was uniformity independent of the time fixed by the States for holding elections. (Chapter 11, act of Congress 1872.) The power granted to the States to establish by law the times, places and manner of holding elections was abridged. Congress declared the " times " the Tuesday after the first Monday in November, the " manner " by Congressional Districts and the " places " where Representatives should be elected — Congressional Districts. I am unable to discover any authority remaining in the Legislature under the provision of the Federal Constitution, save to regulate

the elections by election districts under the general Election Law of the State.

It is asserted that the power of the Legislature in 1917 to redistrict the State was conferred by the Congress in the Apportionment Act of August 8, 1911, which act as has been now held directed the division to be made not only for the sixty-third but " each subsequent " Congress. A review of the act of Congress of August 8, 1911, leads me to a contrary conclusion. The return of the thirteenth census of 1910 was a prerequisite to the power of the Congress to make an apportionment of Representatives. When in August, 1911, the Congress made the apportionment that body was powerless under the Federal Constitution to enact a law making another apportionment until after the return for the fourteenth census ten years later. (*Ex parte Siebold*, 100 U. S. 371.) The basis of an apportionment by the Congress is the number of inhabitants in the States as shown by the decennial census, and as I construe the act of Congress in question the same decennial census of the inhabitants of the State of New York has ever been, and is required to be, the basis of action by the Legislature in a division of the State into Congressional Districts. It is incomprehensible that following the Federal census of 1910 it would be deemed necessary or prudent that the State should immediately thereafter make a second census. Had the Legislature undertaken to do so and divided the districts based upon the census so taken its action would be'in conflict with the act of Congress, as its sole authority to divide the State into districts is derived from Congress. The decennial census of 1910 being the foundation of the legislative power to divide the State into districts so far as the number of inhabitants is concerned, the suggestion that a shifting population may authorize a redistricting, based as it must be upon something other than the decennial census upon which the apportionment was

made, is fallacious. This is apparent when we interpret the act of Congress in its entirety rather than by selecting two or three words therein and declaring them as controlling the intention of the Congress. Section 3 of the act reads: " Section 3. That in each State entitled under this apportionment to more than one Representative, the Representatives to the Sixty-third and each subsequent Congress shall be elected by Districts composed of a contiguous and compact territory, and containing as nearly as practicable an equal number of inhabitants. The said Districts shall be equal to the number of Representatives to which such State may be entitled in Congress, no district electing more than one Representative."

The words relied upon as indicating the intention of Congress that the Legislature was empowered to redistrict the State at any time are " the Representatives to the Sixty-third and each subsequent Congress." The words " each subsequent Congress " were not used for the first time in the act of 1911. The same words will be found in a number of earlier apportionment acts. Having in mind the limitations upon the power of Congress to make an apportionment save once in ten years to be based upon a census, let us turn to the act of Congress of August 8, 1911. The title of the act which we are permitted to consider is, " An Act for the apportionment of Representatives in Congress among the several States *under the thirteenth census.*" Effect must be given to the words " under the thirteenth census." Congress declared that under that census the State of New York was entitled to forty-three Representatives. It required the Legislature to divide the State into forty-three districts, each district to be composed of contiguous territory. It commanded that districts as nearly as practicable should contain an equal number of inhabitants, the basis of the latter being the thirteenth census, upon which Congress had made the allotment and which disclosed

in detail the number of inhabitants within the several subdivisions of the State. We assume that the Legislature thus far performed the duty imposed upon it and as generally understood to have ever been the rule, divided the State so far as the number of inhabitants was concerned upon the basis of the Federal census. As I have heretofore stated, no question has been or is raised as to the validity of the act of the Legislature of 1911. Although the division of the State was made in 1911, the same year the apportionment was made, no election was to be held until the year 1912 when Representatives to the sixty-third Congress were to be elected and so the act of Congress provided that Representatives to that Congress and each subsequent Congress should be elected by districts. What districts? Districts which might be created at any time by reason of shifting population? I think not, but rather from districts created by the Legislature based upon and under the thirteenth census. Three several Congressional elections were held in this State under the act of the Legislature of 1911, which adds to the number of legislative bodies of previous years which gave a practical construction to the power of the Legislature to which I have already adverted. The only power the Legislature possessed to divide the State into Congressional Districts was derived from the act of Congress. The power conferred was not a continuing authority. To so determine one must conclude that the power of the Legislature was greater than the power of Congress. When, in 1911, the Legislature determined and defined the boundaries of Congressional Districts and complied with the requirements of Congress as to territory and the number of inhabitants it fully performed the duty imposed upon it by the Congress.

I am in accord with the suggestion that the State of New York should not be denied full membership in the Congress. I do not agree that unless the elections be

held in the districts as defined in the act of 1917, that elections cannot be held. If the law of 1917 is invalid it is of no effect. Assume, for illustration, that the fact was established beyond doubt that the districts as defined therein were not composed of contiguous territory and that a most unjust discrimination existed in the number of inhabitants. Would we determine in such case that the elections must be held in such districts thus organized in direct violation of the Federal Constitution and the act of Congress? Would we not determine, as we have in cases arising in this State under apportionment acts by the Legislature of senate and assembly districts, where an act has been declared invalid, that elections were required to be held in the districts as they existed prior to the enactment of the statute declared invalid? (*Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185, 215; *Matter of Dowling,* 219 N. Y. 44, 59.)

CRANE, J. (dissenting). Chapters 797 and 799 of the Laws of 1917 were never intended, in my opinion, to apply to vacancies occurring in the sixty-fifth Congress. They spoke for the future and applied to the next regular congressional elections.

Section 3 of the act of Congress, approved August 8, 1911, regulating the present apportionment of representatives, provides, " That in each State entitled under this apportionment to more than one representative, the representatives to the 63rd and each subsequent Congress shall be elected by districts composed of a contiguous and a compact territory and containing as nearly as practicable an equal number of inhabitants. The said district shall be equal to the number of representatives to which such state may be entitled in Congress, no district electing more than one representative."

There can be no question but that Congress had the power to regulate under the Constitution the manner of

holding elections for representatives (U. S. Constitution, art. 1, sec. 4), and this regulation is binding upon the states. This state thereupon passed chapter 890 of the Laws of 1911, dividing the state into districts according to this apportionment by Congress. All previous acts upon the subject were repealed. When John J. Fitzgerald was elected in 1916 to the sixty-fifth Congress, it was from the seventh congressional district as fixed by this law of 1911.

Article 1, section 2, subdivision 4, of the United States Constitution provides that " When vacancies happen in the representation from any State, the executive authority thereof shall issue writs of election to fill such vacancies." Mr. Fitzgerald having resigned to take effect January 1, 1918, the governor of this state issued his proclamation for the election on March 5th, to fill the unexpired term in and for the seventh congressional district. By chapter 797 of the Laws of 1917 the seventh congressional district was so changed by the state legislature as to include a large portion of the territory which was at the time of the election of John J. Fitzgerald in another district and also to exclude therefrom a large portion of the original territory. It is claimed that the legislature could change the seventh congressional district during the term of the congressman elected therefrom and shift it to any part of the state and that there is no redress. The argument for the respondents would carry the power of the state legislature to the extent of making the seventh district a migratory district so that John J. Fitzgerald would be representing during his term various parts of the state according to the will of the legislature.

Thus the state could, by this reasoning, place the seventh district over upon the territory of the fourth and direct that a vacancy occurring in the seventh be filled from the new congressional district. The same territory and electors would thereupon have two representatives

in Congress, the one elected in 1916 for the fourth district still in office, and the one elected to fill the vacancy in the new seventh, changed to the boundaries of the fourth. This in part has been done here.

The act of Congress providing that no district shall elect more than one representative is complied with, it is asserted, because the same territory is called the fourth for one congressman and the seventh for the other — a numerical value wholly dependent upon the fiat of the legislature. But, it is said, the congressmen represent the state and not the districts. This may be true, but the act of Congress provides that he shall be elected in a defined district and that there shall be but one congressman representing that district. To shift that district during his term over upon the territory of some other district by simply changing the number and then permitting the vacancy to be filled from that other district is in effect, if not in theory, giving two congressmen from the same district. A district represents a defined territory and not a mere number. It is a practical matter and not one that yields to attenuated argument. I doubt whether the legislature has power in view of this act of Congress to change the congressional district from which a representative is elected during his term of office. However this may be, I am convinced that the legislature in passing the acts of 1917 never intended to have them apply to vacancies, but that, as above stated, the intention was to have these new districts for the next regular congressional election.

That the governor might issue his writ for an election in the old seventh apparently is conceded, but as he has failed to do this — as it is urged — the election must be in the new boundaries or there can be no election at all. This argument I cannot accept. The governor's proclamation makes no mention of the changed district but refers to the district from which Fitzgerald was

elected. It reads: " WHEREAS, a vacancy exists in the office of Representative in Congress for the Seventh Congressional District of the State of New York, caused by the resignation of John J. Fitzgerald, Representative in Congress from said District; *Now, therefore,* I Charles S. Whitman, Governor of the State of New York, * * * do.hereby order and proclaim that an election for Representative in the Sixty-fifth Congress of the United States for the Seventh Congressional District of the State of New York in the place, and for the unexpired term of said John J. Fitzgerald, be held in the said Seventh Congressional District." " Said Seventh Congressional District " refers to the district Fitzgerald resigned from and he resigned from the district he was elected in. Thus the governor has called an election in that district, the seventh as it existed at the general election in 1916. What else can he mean?

It is said that the legislature is supreme in these. matters. Suppose the legislature should abolish the district altogether. This could not terminate Fitzgerald's office. What district would he then represent? By the act of Congress he must come from some district and be the only representative from that district.

The fact that there is no special repeal of previous laws in chapters 797 and 799 of the Laws of 1917, as is found in chapter 890 of the Laws of 1911, would seem to indicate that the previous law continued for the existing term of the congressmen.

We must trust, it is said, to the good faith of the legislature in these matters. I believe that the act of Congress above mentioned places some limitation upon this power of the state legislatures and that they are not supreme so that they may in effect disfranchise certain voters and give to others the right to.elect two representatives. And this limitation is emphasized by section 26 of the United States Revised Statutes (U. S. Compiled Statutes

Annotated, 1916, vol. 1, sec. 23). Section 26 provides as follows in relation to vacancies: " The time for holding elections in any state, district or territory for a representative or delegate to fill a vacancy, whether such vacancy is caused by a failure to elect at the time prescribed by law, or by the death, resignation or incapacity of a person elected may be prescribed by the laws of the several states and territories respectively."

It will be noted here that the states or territories can only prescribe the time for holding elections to fill vacancies; they cannot change the boundaries. The use of the word " district " is very significant following " state " as showing that the vacancy is conceived to be not alone in the state but in the very district, meaning the territory from which the former representative had been chosen. The power of Congress being plenary over elections to the house of representatives the state authorities are without power to change any of its regulations.

The regulations made by Congress governing the election of representatives are paramount to those made by the state legislature. (*Ex parte Siebold,* 100 U. S. 371, 384.)

When the state legislature changes the congressional districts for future elections, all the districts in the state or a given territory are changed so that there is no such overlapping as arises here. Thus in the election of 1918, within the districts changed by the Laws of 1917, there will be no district stretching over into an adjoining district. All voters and each district will have but one representative. This is another reason for concluding that the legislature never intended that the changed districts should hold for present vacancies.

But it is said voters move out of a district, others become twenty-one, aliens are admitted to citizenship, and women given the right to vote. Many of these

changes are voluntary with the voter, others are privileges distributed equally over the entire state, and exist in all territory alike, but no such changes in the constituency which come about gradually is an answer to the proposition that this law of 1917 gives to a district which already has a representative in Congress the right to send another one there for a portion of the same term.

The fact that the election machinery may be difficult to work if now applied to the congressional districts as they existed in 1916 is not for us to consider. Expediency is no answer to the violation of an act of Congress. The corporation counsel representing the bi-partisan election board of New York city claims that the election machinery will work, and that it is practical to hold the elections in the old districts. This statement should suffice as an answer to this proposition.

For these reasons, I am for the reversal of these orders and the granting of the writs.

HISCOCK, Ch. J., CHASE, POUND and ANDREWS, JJ., concur with McLAUGHLIN, J.; HOGAN and CRANE, JJ., read dissenting opinions.

Order affirmed.

# MEMORANDA

*DECISIONS RENDERED DURING THE PERIOD EMBRACED IN THIS VOLUME.*