STATE EX REL. MIKE HOLM AND GEORGE J. RIES v. DISTRICT COURT OF THE STATE OF MINNESOTA IN AND FOR THE COUNTY OF RAMSEY IN THE SECOND JUDICIAL DISTRICT AND THE JUDGES THEREOF.[1]

July 6, 1923.

No. 23,645.

**Election called by the Governor cannot be enjoined.**
  1. The courts have no authority to enjoin the officials of the executive department from holding an election called by the Governor to fill a vacancy in the representation of this state in the Senate of the United States.

**Courts have no control over Governor when exercising political power.**
  2. In calling such an election under the power conferred upon him by the Federal Constitution, the Governor is exercising a governmental and political power over which the courts have no control.

Upon the relation of the secretary of state and the auditor of Ramsey county, the supreme court issued its alternative writ of prohibition directed to the district court for that county and the judges thereof, requiring them to show cause why they should take any further action in requiring relators to show cause why an injunction should not issue against them. The details of that proceeding are found in the fourth, fifth and sixth paragraphs of the opinion. The matter was submitted to the supreme court on a motion to quash the alternative writ of prohibition. Writ quashed.

*Clifford L. Hilton,* Attorney General, and *Ernest C. Carman,* for relators.

*Frank E. McAllister,* for respondents.

TAYLOR, C.

The seventeenth amendment to the Constitution of the United States provides:

[1]Reported in 194 N. W. 630.

"The Senate of the United States shall be composed of two Senators from each State, elected by the people thereof, for six years; and each Senator shall have one vote. The electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislatures.

"When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies; provided, that the legislature of any State may empower the executive thereof to make temporary appointment until the people fill the vacancies by election as the legislature may direct."

At the general election held in November, 1918, Knute Nelson of Alexandria, Minnesota, was elected a Senator to represent the state of Minnesota in the Senate of the United States for the term of 6 years beginning on the fourth day of March, 1919. Pursuant to this election, he was duly admitted to a seat in the Senate of the United States as a Senator from the state of Minnesota and served as such until his death on the twenty-eighth day of April, 1923, In obedience to the mandate of the Federal Constitution, the Governor, on May 17, 1923, issued a writ of election to fill the vacancy created by his death.

The writ directed that a primary election be held on June 18, 1923, for the nomination of candidates for the position, and that a final election be held on July 16, 1923, for the election of a Senator for the unexpired term. The writ fixed the time and places at which these elections were to be held and prescribed in some detail the manner in which they were to be conducted. It followed and adopted, in substance, the provisions of the election laws of the state governing primary and general elections, and designated as the officers to conduct these elections the same officers designated by the election laws to conduct state primary and general elections.

On June 4, 1923, the district court of Ramsey county, on the petition of three taxpayers, freeholders and qualified voters of the state, issued an order requiring the secretary of state and the county auditor of Ramsey county to show cause why they should not be enjoined from carrying out the provisions of the writ of election.

Thereupon the secretary of state and the county auditor of Ramsey county procured from this court an alternative writ of prohibition requiring the district court of Ramsey county and the judges thereof to show cause before this court why they should not be absolutely restrained and prohibited from taking any further action in such injunction proceeding. The matter was submitted to this court on a motion to quash the alternative writ of prohibition.

The case of Cooke v. Iverson, 108 Minn. 388, 122 N. W. 251, 52 L. R. A. (N. S.) 415, and the several cases in which the court has required the secretary of state to make corrections in the official ballots prepared by him for the use of the voters at state elections are relied upon in support of the claim that the courts may enjoin the secretary of state and the county auditor from carrying out the provisions of the Governor's writ of election. In the Cooke case the court said [at page 390]:

"It is settled beyond all controversy that courts cannot, by injunction or mandamus, or other process, control or direct the head of the executive department of the state in the discharge of any executive duty involving the exercise of his discretion. This necessarily follows from the constitutional division of the state government into three co-ordinate, distinct, and independent branches—legislative, executive, and judicial. Neither is responsible to the other for the manner in which it exercises its discretion in the performance of duties which are governmental or political in their character. Thus far there is no conflict of judicial authority. The conflict arises upon the question whether the rule stated is subject to the qualification that where duties purely ministerial in character are conferred upon the chief executive, and he refuses to act, or when he assumes to act in violation of the constitution and laws of the state, he may be compelled to act, or restrained from acting, as the case may be, by the courts at the suit of one injured thereby in his personal or property rights, for which he has no other adequate remedy."

After considering prior cases and other authorities the court said [at page 393]:

"We hold that: Courts cannot, by injunction, or mandamus, or other process, control or direct the head of the executive department of the state in the discharge of any executive duty involving the exercise of his discretion; but where duties purely ministerial in character are conferred upon the chief executive * * * he may be compelled to act, or restrained from acting, as the case may be, by the courts at the suit of one who is injured thereby in his person or property for which he has no other adequate remedy."

In State ex rel. v. District Court S. J. D. 141 Minn. 1, 168 N. W. 634, 3 A. L. R. 1476, the court, after reviewing the prior cases, said [at page 15]:

"Each of these cases recognizes to the full the rule that courts cannot by any process control or direct a head of the executive department of the state in the discharge of any constitutional executive duty involving the exercise of judgment and discretion. No judicial opinion to the contrary has been noticed."

All courts agree that the judicial department cannot control or restrain the acts of the Governor performed in the exercise of the governmental, political or discretionary powers vested in him as the chief executive officer of the state, and that an attempt to do so would be an unjustifiable interference by one department of the government with the power lodged in another department, and a violation of the constitutional provisions which, as embodied in our Constitution, read as follows:

"The powers of government shall be divided into three distinct departments—the legislative, executive, and judicial; and no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others, except in the instances expressly provided in this Constitution." Const. article 3.

The three distinct departments thus created "are of equal dignity, and, within their respective spheres of action, equally independent." Many, and perhaps the majority, of the courts hold that the judicial department cannot control or restrain the action of the Governor in performing, or refusing to perform, even purely ministerial duties.

Many courts, including this court, however, hold that in proper cases the courts may intervene to protect or enforce private rights where the act involved is purely ministerial or judicial or quasi-judicial in character, but this is the uttermost limit to which any courts have gone so far as we know.

The power to call and hold elections is a governmental and political, not a judicial, power; and that the courts cannot enjoin the holding of an election called by an executive officer or political body vested with power to call elections, except, perhaps, where it is called to vote on a proposition involving a wrongful invasion of private rights, is settled by the nearly unanimous decisions of the courts which have considered that question. People v. City of Galesburg, 48 Ill. 485; Walton v. Devling, 61 Ill. 201; Darst v. People, 62 Ill. 306; Harris v. Schryock, 82 Ill. 119; Thompson v. Mahoney, 136 Ill. App. 403; Duggan v. City of Emporia, 84 Kan. 429, 114 Pac. 235, Ann. Cas. 1912A, 719; City Council of McAlester v. Milwee, 31 Okla. 620, 122 Pac. 173, 40 L. R. A. (N. S.) 576; Copeland v. Olsmith, 33 Okla. 106, 124 Pac. 33; State v. Thorson, 9 S. D. 149, 68 N. W. 202, 33 L. R. A. 582; Roundanez v. Mayor, etc. 29 La. Ann. 271; Morgan v. County Court, 53 W. Va. 372, 44 S. E. 182; Mann v. County Court, 58 W. Va. 651, 52 S. E. 776; Gibbs v. McIntosh, 78 Miss. 648, 29 South. 465, Murfreesboro R. Co. v. Board of Commrs. 108 N. C. 56, 12 S. E. 952; Shoemaker v. City of Des Moines, 129 Iowa 244, 105 N. W. 520, 3 L. R. A. (N. S.) 382.

"The power to hold elections is a political one, and a court of equity has no jurisdiction to enjoin the proper officer from holding an election. An injunction issued in such a case is void, and gives no ground for an attachment for contempt." 10 Am. & Eng. Enc. (2 Ed.) 817.

In Duggan v. Emporia, supra, the Kansas court, after remarking that in a proper case the court would correct the names on the ballot, say [84 Kan. 438]:

"But we can not conceive of conditions where a court of equity would be justified in enjoining the calling and holding of an election."

In People ex rel. v. City of Galesburg, supra, the Illinois court said [48 Ill. 489]: "We are aware of no well considered case which has enjoined the holding of an election or prevented an officer of the law from giving the required notices for or the certificate of election."

And the same court in Dickey v. Reed, 78 Ill. 261, said [at page 271]:

"Elections belong to the political branch of the government, and are beyond the control of the judicial power."

In People v. Voorhis, 222 N. Y. 494, 499, 119 N. E. 106, in which it was sought to enjoin the holding of an election called by the Governor, pursuant to section 2 of article 1 of the Federal Constitution, to fill a vacancy in the office of representative in Congress from that state, the court said:

"Whether a special election of the character of the one under consideration shall be held, and if so when, involves a matter of executive discretion with which the courts have no right or power to interfere."

Some courts have intervened where an unauthorized election was called to vote upon a proposition the adoption of which would invade and cause remediless injury to private-rights; but an election called to elect an officer to fill a vacancy does not involve private rights, and is an exercise of the political power which has been confided to the legislative and executive departments of the government, and article 3 of our Constitution excludes the judicial department from any part in or control over the exercise of that power.

The Supreme Court of the United States, in Massachusetts v. Mellon, 262 U. S. 447, 43 Sup. Ct. 597, 67 L. ed. 1078, filed June 4, 1923, points out the nature and extent of the powers conferred on the courts and the line beyond which they may not go without invading the province of the other departments. In that case the question presented was whether the court had authority to restrain the officials of the executive department from executing a law alleged to be unconstitutional, and the court answered [at page 488]:

"To do so would be not to decide a judicial controversy, but to assume a position of authority over the governmental acts of another and co-equal department, an authority which plainly we do not possess."

In the present case the question presented is whether the courts have authority to restrain the officials of the executive department from holding an election called by the chief executive officer of the state under the authority conferred upon him by the Federal Constitution. The principle applied by the Federal Supreme Court in that case governs this case, and the words above quoted apply as forcibly to this case as to that.

As the courts have no power to control or restrain the action of the Governor in calling the election in question, it is not necessary to consider the other questions argued at the hearing. For that reason we do not determine whether chapter 520, p. 756, of the Laws of 1913, invalid when enacted because in conflict with the Constitution of the United States as it then stood, became operative on the adoption of the Seventeenth Amendment as argued by the petitioners for the injunction. We merely note that the Senate of the United States is the sole judge of the election and qualification of its own members, and call attention to the report of January 21, 1914, made by the committee on privileges and elections of that body in the case of John P. Glass who claimed a seat in the Senate as a senator from the state of Alabama.