## STATE EX REL. HAROLD BIRKELAND v. THEODORE CHRISTIANSON.[1]

February 14, 1930.

No. 27,684.

[1]Reported in 229 N. W. 313.

*Mart M. Monaghan,* for appellant.

*G. A. Youngquist,* Attorney General, and *Charles E. Phillips,* Assistant Attorney General, for respondent.

OLSEN, C.

Harold Birkeland, hereinafter referred to as plaintiff, presented a petition to the governor charging the county attorney of Hennepin county with acts and omissions claimed to constitute malfeasance and non-feasance in the performance of official duties. He petitioned for the removal of the county attorney from office. He ob-

tained from the district court of Hennepin county an alternative writ of mandamus, which came on for hearing before the district court of Ramsey county. That court granted a motion to quash the writ and dismiss the proceeding. Plaintiff appealed to this court from the order quashing the writ.

At the outset it may be well to consider the nature of the proceeding and the result sought to be accomplished thereby. The law invoked by plaintiff is G. S. 1923 (2 Mason, 1927) §§ 6954 and 6955, providing in substance that the governor may for cause shown remove from office a county attorney and other public officials therein enumerated, and that in proceedings for such removal he shall, when charges are made against such an official, appoint a special commissioner to take and report the evidence for and against the accused to be used on the hearing. It is provided that the accused officer shall be furnished a copy of the charges against him and an opportunity to be heard in his defense. The alternative writ of mandamus commanded the governor to do four things: To immediately order a hearing upon the petition; to appoint a commissioner to take and report the evidence; to suspend the county attorney from office pending the hearing; and to hear and determine the charges presented or, in the alternative, to show cause why he had not so done. What is sought to be done is to compel or coerce the governor to enforce a particular statute of this state.

■ The question whether a state court has power to and should interfere by mandamus or injunction to compel the governor to act, or restrain him from acting, under the two sections of the statute cited, is here presented. Many decisions of this court on related questions have been examined. No case directly in point has come to our attention. The fact that no attempt has ever been made either to compel the governor to act, or restrain him from acting, under this law, tends to negative the right claimed. The law in substantially the same form has been in force for more than half a century.

The governor is the head of the executive department and the chief executive of the state. The three departments of state govern-

ment, the legislative, executive and judicial, are independent of each other. Neither department can control, coerce or restrain the action or nonaction of either of the others in the exercise of any official power or duty conferred by the constitution, or by valid law, involving the exercise of discretion. The legislature cannot change our constitutional form of government by enacting laws which would destroy the independence of either department or permit one of the departments to coerce or control another department in the exercise of its constitutional powers. That does not mean that the judicial department may not to a limited extent review the action taken by another department after it has acted. The clearest instance of this is the power of the judicial department, in a proper proceeding, to declare a law unconstitutional or invalid. It is clear that courts can neither command the legislature to consider or enact any law nor restrain it from considering or enacting any law. But after the legislature has enacted or attempted to enact a law, the courts may determine its constitutionality and whether it in fact became a law. And it is settled in this state that, where an officer of the executive department takes action upon a matter coming before him in his official capacity, under a law enacted by the legislature, the courts may by certiorari, to a limited extent, review the action taken.

For many years prior to 1897 it was the law in this state that no act or omission of an executive officer of the state, in his official capacity, could be brought under control of the courts by mandamus or injunction, and that this applied to ministerial acts as well as to those involving an exercise of judgment and discretion. Rice v. Austin, 19 Minn. 74 (103), 18 Am. R. 330; State ex rel. County Treasurer v. Dike, 20 Minn. 314 (363); St. P. & C. Ry. Co. v. Brown, 24 Minn. 517; Western R. Co. v. DeGraff, 27 Minn. 1, 6 N. W. 341; State ex rel. Thompson v. Whitcomb, 28 Minn. 50, 8 N. W. 902; State ex rel. Tuttle v. Braden, 40 Minn. 174, 41 N. W. 817. In State ex rel. Hart v. Common Council, 53 Minn. 238, 55 N. W. 118, 39 A. S. R. 595, the rule was recognized that certiorari will lie to review the quasi judicial acts and proceedings of municipal officers

and bodies, and the limitations as to questions which may be reviewed are stated. In Hayne v. Metropolitan Tr. Co. 67 Minn. 245, 69 N. W. 916, it was suggested that this court had gone further than other courts in holding executive officers of the state exempt from the control of the courts, especially as to officers other than the governor. Prior decisions were cited, but whether they should be modified was not decided because it was held that the action involved only private property rights in which the state had no interest.

The next case is Cooke v. Iverson, 108 Minn. 388, 122 N. W. 251, 52 L.R.A.(N.S.) 415, an action to restrain the state auditor from issuing certain warrants under a law claimed to be unconstitutional. In that case the court lays down the rule that the courts cannot by injunction or mandamus control or direct the head of an executive department in the discharge of any executive duty involving the exercise of his discretion, but may do so where the duty is purely ministerial in character and he refuses to act or assumes to act in violation of the constitution or law. The court in that decision reviews prior decisions and concludes that where the duty imposed on the executive officer is purely ministerial he may be compelled to act or restrained from acting, as the case may be, at the suit of one who is injured thereby in his person or property and has no other adequate remedy. This case modifies the prior decisions to the extent that where the duty involved is purely ministerial in character or where he threatens to enforce an unconstitutional statute, to the irreparable injury of a party in person or property, an executive officer may be compelled to act or be restrained, as the case may be.

State ex rel. Kinsella v. Eberhart, 116 Minn. 313, 133 N. W. 857, 859, 39 L.R.A.(N.S.) 788, Ann. Cas. 1913B, 785, was a proceeding by certiorari to review the action of the governor in removing a county attorney from office under the statute here involved. Prior cases are there reviewed and Cooke v. Iverson, 108 Minn. 388, 122 N. W. 251, 52 L.R.A.(N.S.) 415, followed. The court notes that there is a radical difference of opinion on the question in the de-

cisions of the courts of last resort in the different states, the greater number adhering to the rule that the executive and judicial departments of the state are absolutely independent of each other within the sphere of their respective powers, as was held in the earlier decisions of this court prior to Cooke v. Iverson, 108 Minn. 388, 122 N. W. 251, 52 L.R.A. (N.S.) 415. The conclusion reached in State ex rel. Kinsella v. Eberhart, 116 Minn. 313, 318, 133 N. W. 857, 39 L.R.A. (N.S.) 788, Ann. Cas. 1913B, 785, was that this court had changed its position and was now in accord with the holding of the courts of last resort in the lesser number of states, that "duties imposed by law upon the chief executive which are purely ministerial in their nature, and which do not necessarily pertain to the functions of the office, and which might have been imposed upon any other state officer, are subject to judicial control." It is further held that immunity from judicial direction depends upon the nature of the act to be performed. The court recognizes the difficulty of distinguishing between political or executive duties calling for the exercise of discretion and ministerial acts, and the delicacy of the task which may confront the courts in some cases in determining whether jurisdiction should be assumed. In the notes to State ex rel. Kinsella v. Eberhart, Ann. Cas. 1913B, 785, the majority and minority rules on the subject are restated.

In State ex rel. Martin v. Burnquist, 141 Minn. 308, 170 N. W. 201, 609, this court reviewed on certiorari the action of the governor in removing a judge of probate from office.

In the case of In re Application for Removal of Nash, 147 Minn. 383, 181 N. W. 570, the action of the governor in removing a county attorney from office was reviewed by certiorari. The decision there states that the power to remove a county officer from office rested only on an act of the legislature and was not a power vested in the governor by the constitution; that in such case his action was subject to review to a limited extent by the courts.

In the three cases last referred to the question presented was as to the power of courts to review, to the limited extent therein stated, the action of the governor in removing a county official from

office, under the statute. The authority of the court to command the governor to act, or to restrain him from acting, in such a proceeding was not directly involved. While, as already noted, it is settled in this state that, where the chief executive officer takes action under a law passed by the legislature and his acts are quasi judicial in character, the courts may to a limited extent review his action, no case has been called to our attention where such officer was either commanded to act or restrained from acting in such a case, except perhaps where the law under which he was to act had been declared or was unconstitutional, so that he was not acting under any law.

In Mississippi v. Johnson, 71 U. S. 475, 18 L. ed. 437, it was sought to restrain the president from prosecuting or carrying out the laws of congress known as the Reconstruction Acts. By those laws certain powers and duties were conferred upon the president. There, as here, the question involved the exercise of powers and duties under a legislative act. The court said [71 U. S. 498]:

"The single point which requires consideration is this: Can the President be restrained by injunction from carrying into effect an act of Congress alleged to be unconstitutional?"

The court held that the president could neither be commanded by the courts to perform any of the duties imposed upon him by the law nor restrained from performing them. There, as here, it was urged that the executive was required to perform only ministerial duties. The court defined a ministerial duty as "one in respect to which nothing is left to discretion. It is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law." The court instances cases where the law required the performance of a single specific act and nothing was left to discretion or judgment. It was held that there was no difference between a suit to enforce action by the executive and one to restrain such action, as far as the question of judicial interference with the exercise of executive discretion is concerned. The court said [71 U. S. 499]:

"An attempt on the part of the judicial department of the government to enforce the performance of such duties by the President might be justly characterized, in the language of Chief Justice Marshall, as 'an absurd and excessive extravagance.' "

The fact that no such application had ever before been made was held to indicate that the application should not be entertained. The court further held that while neither congress nor the president could be coerced or restrained in such matters the acts of either, when performed, are in proper cases subject to review by the courts.

This sufficiently points out the distinction between the lack of power of the courts, by mandamus and injunction, to coerce or restrain action, and the authority of the courts in proper cases to review such action after it has been taken. The distinction is sometimes overlooked.

Massachusetts v. Mellon, 262 U. S. 447, 43 S. Ct. 597, 67 L. ed. 1078, was an action to enjoin the secretary of the treasury from carrying out an appropriation act of congress. The court said [262 U. S. 488]:

"The functions of government under our system are apportioned. To the legislative department has been committed the duty of making laws; to the executive the duty of executing them; and to the judiciary the duty of interpreting and applying them in cases properly brought before the courts. The general rule is that neither department may invade the province of the other and neither may control, direct, or restrain the action of the other. We are not now speaking of the merely ministerial duties of officials."
The proceeding was dismissed.

The case of State ex rel. Burnquist v. District Court, 141 Minn. 1, 16, 168 N. W. 634, 637, 3 A. L. R. 1476, may not be strictly in point because there the governor was acting under the constitutional provision that he is to "take care that the laws be faithfully executed." It is in point to the extent that it holds [141 Minn. 17]:

"The position of the President under the Federal Constitution in respect to his duty to execute the laws of Congress is precisely that

of the Governor under our state Constitution in respect to the laws enacted by our legislature."

The case of Mississippi v. Johnson, 71 U. S. 475, 18 L. ed. 437, is cited with approval.

In State ex rel. Holm v. District Court, 156 Minn. 270, 194 N. W. 630, 632, it was sought to restrain the state auditor and secretary of state from carrying out the order or writ of the governor for the holding of a special election to fill a vacancy in the office of United States senator. The court said [156 Minn. 273]:

"All courts agree that the judicial department cannot control or restrain the acts of the Governor performed in the exercise of the governmental, political or discretionary powers vested in him as the chief executive officer of the state."

The court quotes with approval from People ex rel. Fitzgerald v. Voorhis, 222 N. Y. 494, 499, 119 N. E. 106:

"Whether a special election of the character of the one under consideration shall be held, and if so when, involves a matter of executive discretion with which the courts have no right or power to interfere." [156 Minn. 275.]

It was held that the courts had no authority to control or restrain the action of the governor in the matter of calling such an election.

In order to be entitled to a writ of mandamus in this case the plaintiff must show, first, that the duty resting upon the governor, and which plaintiff seeks to have performed, is a mandatory duty owing to him, so that the right to performance is clear; second, that it is merely a ministerial duty, not involving the exercise of any discretion or judgment. Whether plaintiff would have to show further that he had suffered injury in his person or property for which he had no other adequate remedy, as stated in Cooke v. Iverson, 108 Minn. 388, 122 N. W. 251, 52 L.R.A.(N.S.) 415, and restated in State ex rel. Holm v. District Court, 156 Minn. 270, 194 N. W. 630, we need not determine.

■ Reading the two sections of the statute here in question together, they provide that the governor "may" for cause remove from

office certain designated public officials, and that when charges are made against any such officer he "shall" proceed in the manner directed by the statute. The use of the words "may" and "shall" is not controlling; either word in a statute may be held mandatory or directory. The courts will consider the language used, the subject matter, the importance of the provisions, and the object intended to be secured, and ascertain the legislative intent. Winters v. City of Duluth, 82 Minn. 127, 84 N. W. 788; 6 Dunnell, Minn. Dig. (2 ed.) § 8954, and notes.

By this statute the governor is authorized to do certain things and directed as to the manner in which to proceed. His important and manifold other duties are defined by the constitution and laws of this state. As chief executive of the state, in the performance of his official duties involving the exercise of discretion or judgment, whether defined by the constitution or by legislative enactment, he cannot be commanded or coerced either by the legislature or the courts. He is charged by the constitution with the duty of taking care that all the laws of the state are faithfully executed. His two-year elective term of office does not invite neglect of duty. It does not seem probable that the legislature intended to command the governor in a mandatory way to execute this particular law more than any other law. We do not believe that it is customary for the legislature to issue mandatory commands to the governor.

In State ex rel. Schwartzkopf v. City of Brainerd, 121 Minn. 182, 141 N. W. 97, 46 L.R.A. (N.S.) 9, it was sought by mandamus to compel the city council to fix a time and place for hearing charges preferred against a city official. The city charter provided that city officials "may" be removed from office by vote of two-thirds of the members of the council and that the city council "shall" fix the time and place for trial of the accused officer. The charter contained the further usual provisions, that no officer should be removed except for cause, nor unless first furnished with a copy of the charges, nor until given reasonable opportunity to be heard. It was held that the charter imposed no positive duty upon the city council except that when, in the exercise of the disciplinary

discretion vested in the council by the first portion of § 12, it undertakes to remove an officer—it must furnish him with a copy of the charges preferred against him, give him an opportunity to be heard, and fix the time and place for the trial—such latter provisions being mere limitations upon the power of removal previously granted and not being intended to impose upon the council any duty either to prefer charges of its own motion or to entertain and hear petitions for removal presented by outsiders, whether citizens and taxpayers or not. We place the same construction on G. S. 1923 (2 Mason, 1927) §§ 6954 and 6955. See also State ex rel. County of Morrison v. Babcock, 161 Minn. 80, 200 N. W. 843.

■ The duties imposed upon the governor by these two sections of the statute are not purely ministerial duties. They are essentially governmental and political duties requiring the exercise of discretion and judgment. As said in People ex rel. Fitzgerald v. Voorhis, 222 N. Y. 494, 499, 119 N. E. 106, in reference to calling a special election, "whether a special election of the character of the one under consideration shall be held, and if so when, involves a matter of executive discretion." Here, whether a proceeding to remove an official shall be entertained and, if so, when, involves the exercise of executive discretion. The county attorney of Hennepin county, the most populous county in this state, is we believe at all times engaged and occupied in the performance of most important official duties. The governor presumably has fairly accurate information as to public business and law enforcement in that county, as well as in all other counties in the state. It may reasonably be inferred that the legislature, in granting this authority to the governor instead of to some inferior official or commissioners, had in mind the difficult situations that might arise and deemed it wise to intrust the matter to his discretion. Even the appointment of a special commissioner to take and report the evidence requires the exercise of some judgment and discretion. Whether to suspend the county attorney from office, or to demand his attendance before a commissioner and before the governor, at a particular time when he may be engaged in important trials or business for the state

and county, or at all, are questions involving the interests of the county and the public and requiring the exercise of discretion. See State ex rel. Schmidt v. Youngquist, 178 Minn. 442, 227 N. W. 891.

In Mississippi v. Johnson, 71 U. S. 475, 18 L. ed. 437, it was sought to disassociate the duties imposed by the laws of congress upon the president from his office as president and to have him considered as a private person or a mere appointee of congress. The court held this claim not tenable.

In addition to cases already considered, the plaintiff cites Tucker v. Board of Co. Commrs. 90 Minn. 406, 97 N. W. 103, and State ex rel. Skyllingstad v. Gunn, 92 Minn. 436, 100 N. W. 97, 100. These cases involve the duties of a county board and not those of the governor. Only the right to review actions of such boards was involved in the Tucker case. What was said in the Gunn case as to mandatory duties was appropriate as to the parties and the facts of that case. It may be noted that the extract cited by counsel from the latter case is preceded by a statement [92 Minn. 443] that "the fact that the language of the act  *  *  *  is not in terms mandatory is not conclusive," thus recognizing the rule that the courts may construe language in a statute as either permissive or mandatory.

As appears from the order made, the district court recognized the fact that the governor had and should exercise discretion before taking any action in the matter, but based its decision, partly at least, on the holding that there had not been sufficient time for investigation and consideration. The decision being right as a matter of law, we need not consider the question of the correctness of the reasons therefor.

Order affirmed.

HILTON, J. took no part.