STATE EX REL. R. J. AHLSTROM v. HELEN BAUMAN AND
OTHERS.[1]

May 3, 1935.

No. 30,394.

*Arthur LeSueur,* for appellant (relator below).

*R. S. Wiggin,* City Attorney, and *Thomas B. Kilbride,* Assistant
City Attorney, for respondents.

[1]Reported in 260 N. W. 523.

HOLT, JUSTICE.

The appeal is from an order sustaining respondents' demurrer to relator's amended petition for an alternative writ of *mandamus*.

The substance of the allegations of the petition are these: Relator is a citizen of the state, residing in the city of Minneapolis, and is a teacher in the public schools of the city. The action is brought in behalf of relator and the teachers and employes of the public schools of the city similarly situated. Respondents compose the board of education in charge of the special school district of the city under the laws creating the district and the board. In 1929 the board adopted a schedule of teachers' salaries set forth in the petition. Thereafter, in 1932, contracts of hire were tendered the teachers by the board which were required to be executed by them; otherwise their services were ended. The teachers did sign such contracts. In these contracts the amount of the monthly salary was specified, but purported to be conditional for the teaching periods September 19, 1932, to December, 1932, and January 1, 1933, to end of school year, under this provision in the contracts:

"The Board of Education of the City of Minneapolis submits for your acceptance the assignment for the school year 1932-3 subject to the laws of Minnesota; and the rules and regulations of said Board now in effect or as the same hereafter may be repealed, amended or modified. The monthly salary herein named is stated and fixed upon the express agreement that the same may be reduced by the Board at any time whenever a reduction or reductions may become necessary in the opinion of the Board by reason of reductions in the amount of money available for teaching service."

In May, 1932, the board adopted a resolution to restore teachers to the automatic salary increase as of January 1, 1933, "for the purpose of establishing the basic figures from which a deduction or deductions may be made at any time whenever such deduction or deductions may become necessary in the opinion of the board." In December, 1932, the board made a cut of 15 per cent in the salary fixed until September, 1933. In August, 1933, it appeared to the board that there would be a great delinquency in the payment of

taxes and that the board would not have sufficient money to pay teachers and employes for the balance of the year and that therefore the proposed 10 per cent cut from September 1 on should be increased to 30 per cent in order to balance the budget; but, if assurance should be received from the board of estimate and taxation and the city comptroller that any balance in excess of the estimate may be distributed, the board would distribute such excess to the teachers in the form of salary dividends. The board of estimate and taxation on September 27 approved the plan of the board of education to put into effect the 30 per cent cut of the teachers' salaries from September 1 to December 31, 1933, and to distribute any balance available at the close of the year, due to tax collections in excess of the present estimate, in the form of salary dividends. Prior to the 30 per cent cut in the salaries of teachers and employes there had been reductions so that the total cuts amounted to approximately 45 per cent. It is alleged that the teachers accepted the 30 per cent cut in reliance on the promise of the board above set forth. It is averred that the sum of $239,167.79 of delinquent taxes was collected and turned over to the board in excess of the amount necessary to pay the salaries of teachers and employes at the pay cut accepted and paid them; and thereafter the board did distribute as salary dividends the sum of $105,522.48 thereof, but refuses to distribute the balance of $133,645.31, although demand has been made and it is available. There are further allegations that the board did not levy more than 20 mills on the dollar for the year 1933 although the law permits a maximum levy of 22 mills, and the board has announced an intention not to make the maximum levy for 1934; and relator prays that a peremptory writ issue directing the board to distribute the said sum of $133,645.31 as salary dividends if moneys in the hands of the board are available, and, if not, that then a tax levy be made to raise the amount required.

*Mandamus* is an extraordinary remedy and is not to be resorted to where redress may be had in an ordinary suit at law. The enforcement of a promise or contract to pay money—and such is relator's claim—may be had in an action at law. But we need not place the decision on a technical ground of procedure. 2 Mason

Minn. St. 1927, §§ 9722 and 9724, authorizes a writ of *mandamus* to compel the performance of an act which the law specially enjoins as a duty; but the alternative writ must "state concisely the facts showing the obligation of the defendant to perform the act, and his omission so to do." In United States ex rel. McLennan v. Wilbur, 283 U. S. 414, 420, 51 S. Ct. 502, 504, 75 L. ed. 1148, it is said:

"Under the established rule the writ of mandamus cannot be made to serve the purpose of an ordinary suit. It will issue only where the duty to be performed is ministerial and the obligation to act peremptory, and plainly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable."

To the same effect are our decisions. State ex rel. McGill v. Cook, 119 Minn. 407, 138 N. W. 432, Ann. Cas. 1914B, 88; State ex rel. Schwartzkopf v. City of Brainerd, 121 Minn. 182, 141 N. W. 97, 46 L.R.A. (N.S.) 9; Olson v. Honett, 133 Minn. 160, 157 N. W. 1092, 1103; State ex rel. Lewis v. City Council of Minneapolis, 140 Minn. 433, 168 N. W. 188; State ex rel. Birkeland v. Christianson, 179 Minn. 337, 229 N. W. 313.

Has relator, and the teachers in whose behalf he sues, a clear right to have a share of the $133,645.31 which he alleges remains of the $239,167.79 taxes collected in excess of the anticipated collection when the 30 per cent cut in salaries was made? To answer the question it is necessary to go to the so-called contract of employment signed by the board and the teachers and see whether thereunder there can be a clear right to a share in any funds at the disposal of the board. The provision above quoted from that instrument indicates clearly that the board assumes no obligation to pay any definite fixed salary for the school year. A monthly payment is specified, but subject to any cut the board may deem necessary. To call such a document a contract is a misnomer. It is deplorable that the board of education in charge of the public schools in the largest city of the state is placed in such position that it must require of its teachers, employed to train its youth to become upright and law-abiding citizens, to accept contracts which give

them no assurance that the stipend named therein and upon which they must depend for their daily bread, small though it be, will be forthcoming. On the contrary, it advises them that the board reserves the right to cut it down as it may deem needful. It is impossible to ground a clear right upon instruments like those under which relator and the other teachers worked during the school year from September, 1932, into June, 1933. But relator alleges that when the 30 per cent cut was made the board promised to distribute any excess received from the collection of taxes over and above what the board estimated the collection would be when the cut was made; and that such excess was collected, to which the teachers are entitled. But under the contracts of the teachers they could not legally complain of the 30 per cent cut. So there is no consideration for the promise to distribute any excess collection that might become available. *Mandamus* may not be used to enforce a moral obligation.

The order is affirmed.