## STATE EX REL. GEORGE G. GOODWIN v. PATRICK 'E. FLAHAVEN. STATE EX REL. RICHARD F. PALMER AND OTHERS v. R. G. PERPICH.

182 N. W. (2d) 182.

January 13, 1971—Nos. 42954, 42955.

*Frank Hammond* and *Samuel L. Hanson,* for relators.
*Sydney Berde* and *Alan W. Weinblatt,* for respondents.

PER CURIAM.

The above cases both arise out of the election for state senator in 1970. The issues involved can be simplified if the two cases are consolidated for determination.

In Minnesota, members of our legislature are elected on a non-partisan ballot. However, they caucus as liberals and conservatives and whichever of the two groups commands a majority organizes the senate or the house of representatives as the case may be. We are concerned here only with the senate.

As the fortunes of politics would have it, as a result of the 1970 election 33 liberals and 34 who caucused with the conservatives were elected.

The lieutenant governor is, under our Constitution, ex officio president of the senate. Minn. Const. art. 5, § 6. His duties are derived from and prescribed by the Constitution. The manner of organization of the senate is prescribed by statute. Under Minn. St. 3.05 the lieutenant governor calls the senate to order. He is then required to appoint from the members of the senate a clerk pro tem who calls the roll of the senate in order of their districts. The statute then provides that those whose names are called shall present their certificates of election and that "[a]ll whose certificates are so presented shall stand and be sworn." Art. 4, § 29, of our Constitution provides:

"All members and officers of both branches of the legislature shall, before entering upon the duties of their respective trusts, take and subscribe an oath or affirmation to support the Constitution of the United States, the Constitution of the State of Minnesota, and faithfully and impartially to discharge the duties devolving upon him as such member or officer."

· It takes a majority of the senate to constitute a quorum. Art. 4, § 3, of the Constitution provides:

"Each house shall be the judge of the election returns and eligibility of its own members; a majority of each shall constitute a quorum to transact business, but a smaller number may adjourn from day to day, and compel the attendance of absent members in such manner and under such penalties as it may provide."

In the absence of a majority of the members of the senate necessary to constitute a quorum, all they can do is to meet and adjourn.

Prior to the opening of the legislative session in 1971, when the senate was called to order by respondent R. G. Perpich, the lieutenant governor, an election contest had been filed against Richard F. Palmer, one of the petitioners herein, who held a valid certificate of election. The lieutenant governor ruled that as a result of such election contest Mr. Palmer must stand aside and could not be sworn. That left the senate evenly divided on a number of parliamentary moves. The lieutenant governor then ruled that he could cast a deciding vote in the organization of the senate, and, as a result, the liberal group proceeded to select respondent Patrick E. Flahaven secretary of the senate, claiming they had a majority. The matter was then brought to our court, and we issued our orders to show cause why the election of the secretary of the senate by the liberals with the deciding vote of the lieutenant governor should not be held invalid, and whether the lieutenant governor has any power to vote in case of a tie.

The questions presented are threefold: (1) Does this court have original jurisdiction to pass on matters affecting the senate's action in organizing itself, and if it has such jurisdiction should the court assert it? (2) Does the lieutenant governor have any vote in case of a tie among members of the senate? (3) Does the lieutenant governor have power to rule that a member hold-

ing a valid certificate of election should not be sworn and seated; and does he have authority to refuse to accept the certificate of election or to count the vote of such member on the grounds that there is pending a contest of his election based on an alleged violation of the Corrupt Practices Act?

■ The first question posed is the most difficult of solution. In the separation of powers between the three branches of government the thread that separates judicial power from legislative prerogative is an exceedingly thin one. Our Constitution provides that each house of the legislature shall have the responsibility of judging the eligibility of its own members. It frequently requires much judicial restraint to refrain from treading on this legislative prerogative. However, when a question arises such as we now have before us, who is to decide whether a constitutional officer is attempting to usurp power not granted to him if we do not do so?

It has been argued that we do not have power to intrude upon the operation of the legislature, and that if we have such power we should refrain from exercising it. Art. 6, § 2, of our Constitution provides, among other things:

"* * * It [the supreme court] shall have original jurisdiction in such remedial cases as may be prescribed by law, and appellate jurisdiction in all cases, but there shall be no trial by jury in said court."

Pursuant to this constitutional provision, Minn. St. 480.04 has been enacted by the legislature. It provides:

"The [supreme] court shall have power to issue to all courts of inferior jurisdiction and to all corporations and individuals, writs of error, certiorari, mandamus, prohibition, quo warranto, and all other writs and processes, whether especially provided for by statute or not, that are necessary to the execution of the laws and the furtherance of justice. * * *"

Clearly, under this provision we have power to determine whether a constitutional officer is attempting to usurp power

which is not granted to him by the Constitution or by the laws of this state. It has been held that quo warranto is a proper proceeding to determine whether a branch of the legislature has been organized according to the Constitution. State ex rel. Werts v. Rogers, 56 N. J. L. 480, 28 A. 726, 29 A. 173, 23 L. R. A. 354.

While there seems to be little authority on the subject, we find the following in 81 C. J. S., States, § 30:

"As between two bodies claiming to be the lawfully constituted senate or house of representatives, the courts have jurisdiction to decide which is the constitutionally organized body. Further, the courts have power to determine whether an organization of a branch of the legislature has been made in violation of the constitution."

In support of this statement we have the cases of In re Gunn, 50 Kan. 155, 32 P. 470, 948, 19 L. R. A. 519, and State ex rel. Werts v. Rogers, *supra*.

We are convinced that no matter how much we would desire to avoid it, we do have power to determine whether the lieutenant governor in presiding over the senate acted in accordance with the powers granted to him by the Constitution.

■ With respect to the power of the lieutenant governor to cast the deciding vote in case of a tie among members of the senate, we have no difficulty. He is not a member of the senate. He occupies his office as ex officio president of the senate only by virtue of the Constitution. His powers were long ago defined in State ex rel. Marr v. Stearns, 72 Minn. 200, 215, 75 N. W. 210, 213, where we said:

"* * * His [the lieutenant governor's] sole constitutional duties are to preside over the senate (he is not a member thereof and has no vote, even in cases where the senators are evenly divided), and to authenticate by his signature the bills passed by the senate."

This decision was followed by an opinion of the attorney general written in 1919, addressed to the Honorable Thomas Frank-

son, the then lieutenant governor, which apparently has never been challenged since that time, where he said (Report Attorney General, 1920, No. 768):

"You ask to be advised whether, 'in the event of a tie vote of the senate you as president of that body will be permitted to cast the deciding ballot.'

"Your inquiry is answered in the negative. I call your attention to the case of State of Minnesota, ex rel., Mar. [sic] vs. Stearns, 72 Minn. 200, wherein will be found a very full discussion of the powers of the lieutenant governor and in which, among other things, it is stated:

" 'His (the lieutenant governor's) sole constitutional duties are to preside over the senate (he is not a member thereof and has no vote even in cases where the senators are evenly divided), and to authenticate by his signature all bills passed by the senate.' "

We have no difficulty in reaffirming what the attorney general at that time so clearly held. The lieutenant governor has no vote in the senate, either in its organization or otherwise.

It might be noted that the Constitution of the United States expressly provides that the vice president shall have such right to vote in case of a tie. Art. I, § 3, contains, among other things, the following:

"The vice president of the United States shall be president of the senate, but shall have no vote unless they be equally divided."

We have been informed that other states have similar provisions in their constitutions. We have no comparable provision in our Constitution. If the people of Minnesota had wanted to give the lieutenant governor the right to vote in case of a tie they could easily have done so. They had before them, when our Constitution was drafted, the constitutions of many other states as well as the Constitution of the United States. They clearly did not give

this power to the lieutenant governor, and we have no authority to confer it upon him.

■ The third and final question is whether the lieutenant governor has power to refuse to accept Mr. Palmer's certificate of election or to permit him to vote in the organization of the senate. Clearly the lieutenant governor has no such power. Under our Constitution each house of the legislature is the judge of the eligibility of its own members. Nowhere do we find in our Constitution or our statutes any provision giving the lieutenant governor the right or power to determine who is eligible to be a member of the senate.

The procedure for organizing the legislature is provided by our statutes. Minn. St. 3.05 reads:

"At noon of the day appointed for the convening of the legislature, the members thereof shall meet in their respective chambers. The lieutenant governor shall call the senate to order; and the secretary of state, the house of representatives. In the absence of either of these officers, the oldest member present shall act in his place. The person so acting shall appoint, from the members present, a clerk pro tem, who shall call the legislative districts in the order of their numbers; and, as each is called, the persons claiming to be members therefrom shall present their certificates to be filed. All whose certificates are so presented shall then stand and be sworn."

Section 3.02 provides:

"For all purposes of organization of either house of the legislature, a certificate of election thereto, duly executed by the auditor of the proper county, or by the secretary of state when the member is elected from more than one county, shall be prima facie evidence of the right to membership of the person therein named."

There is no dispute here that Mr. Palmer had in his possession a certificate of election and that upon the roll call of the senate

he presented it to the president as required by statute. The lieutenant governor refused to accept it. He had no such power, nor did he have any power to order Mr. Palmer to stand aside; nor did the senate tie vote which failed to overrule the lieutenant governor constitute a refusal to seat Mr. Palmer.

The determination of the status and eligibility of Mr. Palmer rests with the senate and they must determine his eligibility. On that question we do not intrude. But in like measure, neither does the lieutenant governor have power to usurp the power of the senate in deciding this issue. To permit him to do so would enable the lieutenant governor to control the organization of the senate by arbitrarily refusing to follow the Constitution and statutes of this state. We do not think he has such power.

If an election contest is pending against a member of the legislature, Minn. St. 209.10, subd. 2(d), relating to a hearing on such contest, provides:

"The vote upon the contest shall be viva voce, any member may offer reasons for the vote he intends to give, and a majority of the votes given shall decide; but no party to the contest shall vote upon any question relative thereto * * *."

Here, again, it is the senate whose votes must decide the outcome of the election contest. The lieutenant governor has no voice in such determination except to preside over the senate.

We assume that the parties will now conform to this opinion without the necessity of issuing a formal writ.

MURPHY, JUSTICE (dissenting).

I cannot disagree with the majority opinion in so far as it deals with the right of the lieutenant governor to vote under art. 5 of the Minnesota Constitution. I am of the opinion, however, that we should be guided by the general rule expressed in 29 C. J. S., Elections, § 252, p. 699, which states:

"* * * [W]here constitutional or statutory provisions make a legislative body the sole judge of the election and qualifica-

tions of its own members, the final decision rests in such body, and the courts may not interfere."

Shorn of procedural trappings, the real issue involves a partisan political dispute which should not be before us. I cannot agree with the majority opinion in so far as it might be interpreted to be an encroachment by the judiciary upon the exercise of functions delegated to the legislature. In any event, I am inclined to the view that the proceedings are premature, since the legislature has not yet determined the eligibility and qualifications of the pivotal member, as provided by Minn. St. 209.10; nor can I agree that judicial interference is warranted because the traditional democratic process of deliberation and compromise has failed.