STATE OF MINNESOTA

IN SUPREME COURT

A16-0960

Original Jurisdiction

Minnesota Voters Alliance
and Kirk Stensrud,

Petitioners,

vs.

Steve Simon, only in his official capacity
as the Minnesota Secretary of State, Joe
Mansky, only in his official capacity as the
Ramsey County Election Manager,
Virginia Gelms, only in her official
capacity as the Hennepin County Election
Manager, and Election Judges John and
Jane Doe, only in their official capacities as
Election Judges,

Respondents.

_____

Per Curiam
Took no part, McKeig, J.

Filed:  September 28, 2016
Office of Appellate Courts

Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota, for
petitioners.

Lori Swanson, Attorney General, Nathan J. Hartshorn, Assistant Attorney General, Saint
Paul, Minnesota, for respondent Minnesota Secretary of State Steve Simon.

John J. Choi, Ramsey County Attorney, Robert B. Roche, Assistant County Attorney, Saint
Paul, Minnesota, for respondent Ramsey County Election Manager Joe Mansky.

Michael O. Freeman, Hennepin County Attorney, Daniel P. Rogan, Assistant County
Attorney, Minneapolis, Minnesota, for respondent Hennepin County Election Manager
Virginia Gelms.

William Z. Pentelovitch, Judah A. Druck, Maslon LLP, Minneapolis, Minnesota; and

1

Teresa Nelson, Saint Paul, Minnesota, for amici curiae American Civil Liberties Union of Minnesota, League of Women Voters Minnesota, Jewish Community Action, Education Minnesota, and Project Vote.

S Y L L A B U S

The facts and circumstances of petitioners' claims of alleged misconduct with respect to election officials' procedures for determining voter eligibility do not demonstrate that an exercise of this court's original jurisdiction under Minn. Stat. § 204B.44(a)(4) (Supp. 2015) is warranted given the availability and adequacy of other remedies.

Petition dismissed.

Considered and decided by the court without oral argument.

O P I N I O N

PER CURIAM.

On June 15, 2016, the Minnesota Voters Alliance and Kirk Stensrud filed a petition under Minn. Stat. § 204B.44 (Supp. 2015), asserting that respondents are not taking the necessary steps to ensure that those ineligible to vote are not permitted to vote. Specifically, petitioners contend that respondents' alleged failures to identify people deemed ineligible to vote by reason of a court order, and allowing these people to certify their eligibility to vote even though election officials know by reason of a court order that these people are ineligible to vote, violates the separation-of-powers doctrine and implicates the constitutional rights of eligible voters. Petitioners ask us to declare the actions of the Secretary of State and election officials unconstitutional, to issue an order directing those officials to stop allowing individuals to self-certify their eligibility to vote,

2

and to grant petitioners' requested relief in advance of the general election on November 8, 2016.

In an order filed June 21, 2016, we directed respondents Secretary of State Steve Simon, Ramsey County Election Manager Joe Mansky, and Hennepin County Election Manager Virginia Gelms to respond to the petition by addressing several questions, including whether the petition properly invokes our original jurisdiction under Minn. Stat. § 204B.44.[1] Based on the nature of the allegations and the availability of an alternative and adequate remedy in the district court, we conclude that, even if we had original jurisdiction under Minn. Stat. § 204B.44(a)(4), we would not exercise it here, and, therefore, we dismiss the petition.[2]

We begin with a brief discussion of the laws that govern voter registration and eligibility to vote. The Minnesota Constitution grants the right to vote. Minn. Const. art. VII, § 1 (providing that "[e]very person 18 years of age" or older who has been a U.S. citizen for 3 months and has resided in the precinct for the 30 days preceding the

---

[1] Specifically, we directed the respondents to address, in addition to the jurisdictional question: (1) whether any affirmative defenses to the petition would be asserted and the nature of those defenses; (2) whether any factual disputes exist that require the appointment of a referee, and a proposed schedule for return of a referee's report and recommendation; and (3) based on the requirements for the orderly administration of elections, the last date for a decision on the petition. Because we dismiss the petition based on our answer to the jurisdictional question, we do not address these other issues in this opinion.

[2] In 2015, the Legislature amended Minn. Stat. § 204B.44. Act of May 22, 2015, art. 1, ch. 70, § 31, 2015 Minn. Laws 822, 838. In addition, the Revisor of Statutes renumbered this statute. *See* Minn. Stat. § 3C.10, subd. 1 (2014) (addressing the Revisor's editorial powers for statutes). As a result of these changes, Minn. Stat. § 204B.44(d) (2014) was renumbered and became Minn. Stat. § 204B.44(a)(4) (Supp. 2015). The actual wording of Section 204B.44(d) did not change.

election "shall be entitled to vote in that precinct"). By statute, any individual who, "at the time of an election," is at least 18 years old, a U.S. citizen, and a Minnesota resident for at least 20 days before the election "is eligible to vote." Minn. Stat. § 201.014, subd. 1 (2014).

The constitution also provides that "a person who has been convicted of treason or felony, unless restored to civil rights," and "a person under guardianship, or a person who is insane or not mentally competent" is not eligible to vote.[3] Minn. Const. art. VII, § 1; *see also* Minn. Stat. §§ 201.014, subd. 2 (same), 609B.610 (2014) ("An individual convicted of treason or any felony whose civil rights have not been restored is not eligible to vote . . . ."). But the Legislature has identified the circumstances under which the voting rights of felons and wards are restored. The voting right of a felon is restored upon discharge of the conviction. Minn. Stat. § 609.165, subds. 1-2 (2014) (stating that upon discharge of a conviction due to court order or sentence expiration, "such discharge shall restore the person to all civil rights, . . . with full right to vote"). A ward whose right to vote has specifically been restricted by court order must have that right restored by a subsequent court order. Minn. Stat. § 201.014 (2014); s*ee Minn. Voters Alliance v. Ritchie*, 890 F. Supp. 2d 1106, 1117 (D. Minn. 2012) ("[T]he constitutional prohibition against voting based on guardianship status applies only when there has been an individualized judicial finding of incapacity to vote.")[4]

---

[3] In this opinion, we refer to a "person who has been convicted of treason or felony, unless restored to civil rights" as a "felon," and to "a person under guardianship, or a person who is insane or not mentally competent" as a "ward."

[4] The Minnesota Constitution restricts the right to vote of those under guardianship, but beginning in 2003, wards were presumed to retain the right to vote absent a specific

4

In order to vote, eligible persons must register, Minn. Stat. § 201.018, subd. 2 (2014), and they do so by completing "a voter registration application" at least 20 days before an election, by registering when submitting an absentee ballot, or by registering on the day of an election, Minn. Stat. §§ 201.054, subd. 1, 201.061, subds. 1, 3, 203B.04, subd. 4 (2014).  Applicants certify eligibility to vote by signing the registration application, *see* Minn. Stat. § 201.071, subd. 1 (2014) (providing the form of the voter registration application and the certification of voter eligibility); by completing the certificate of eligibility included with an absentee ballot, *see* Minn. Stat. § 203B.07, subd. 3 (describing the "certificate of eligibility" on the "back of the return envelope" for an absentee ballot); or by completing the registration process on election day, *see* Minn. Stat. § 201.061, subd. 3 (2014) (describing the procedures for registration "at the polling place").  As part of this process, the persons certify that they have "not been found by a court to be legally incompetent to vote" and that they "have the right to vote because, if [they] have been convicted of a felony, [their] felony sentence has expired (been completed) or [they] have been discharged from [their] sentence."  Minn. Stat. § 201.071, subd. 1.

Voter registration applications are used to compile and update Minnesota's statewide voter registration system and database.  Minn. Stat. § 201.081, subd. 1 (2014) ("The statewide registration system is the official record of registered voters."); *see also* Minn. Stat. §§ 200.02, subd. 20 (" 'Statewide registration system' means the computerized

---

finding to the contrary in the order appointing the guardian.  *See* Act of Apr. 11, 2003, ch. 12, art. 2, § 2, 2003 Minn. Laws 117, 166 (codified as amended at Minn. Stat. § 201.014, subd. 2 (2014)); *see also* Minn. Stat. §§ 524.5-120, 524.5-313(c)(8) (2014).

central statewide voter registration system and database developed and maintained by the secretary of state . . . ."), 201.022, subd. 1 (2014) ("The secretary of state shall maintain a statewide voter registration system to facilitate voter registration and to provide a central database containing voter registration information . . . .").  Data on people "registered to vote" are maintained in the system and are updated based on the information provided to the Secretary of State by several government entities, including the Department of Health, the Department of Public Safety, the State Court Administrator, and the Department of Corrections.  *See* Minn. Stat. §§ 201.13, subds. 1-1a, 201.14, 201.15-.158 (2014).[5]  As part of the updating process, county auditors must "change the status" of registered voters to reflect the status reported by these entities, including marking registered voters as "challenged" for felony convictions, or removing a challenge from the voter's record if a felon has been "discharged from a sentence."  *See* Minn. Stat. §§ 201.157-.158.  A "master list" of registered voters, updated with the information provided to the Secretary of State, is provided to each county auditor at regular intervals, including in advance of absentee and in-person voting.  Minn. Stat. § 201.091 (2014).

On election day, an election judge must "challenge an individual whom the [election judge] knows or reasonably believes is not an eligible voter."  Minn. Stat. § 204C.12, subd. 1 (2014).  If a challenge is made, the election judge administers an oath to the

---

[5] The "status" information may be the report of a voter's death, Minn. Stat. § 201.13, subds. 1-1a; residency or citizenship information, Minn. Stat. §§ 201.13, subd. 3 (2014), 201.158; name changes, Minn. Stat. § 201.14; or, felony convictions or guardianship orders that revoke voting rights, Minn. Stat. §§ 201.15, 201.155, 201.157(a); or the restoration of voting rights for felons or wards, Minn. Stat. §§ 201.15, subd. 2, 201.155.

challenged individual and asks "sufficient questions to test that individual's residence and right to vote." *Id.*, subd. 2 (2014). "If the challenged individual's answers to the questions show ineligibility to vote in that precinct, the individual shall not be allowed to vote." *Id.*, subd. 3 (2014). But if "the answers to the questions fail to show that the individual is not eligible to vote in that precinct and the challenge is not withdrawn," the election judge verbally "administer[s] the oath on the voter certificate," and after taking the oath, completing, and signing the certificate, "the challenged individual shall be allowed to vote." *Id.*

With these eligibility and registration standards in mind, we turn to the allegations of the petition before us. Petitioners allege that despite receiving information on a continuing basis regarding felons and wards whose right to vote has been revoked or otherwise restricted (including from publicly available court orders), Minnesota election officials fail to adequately update the statewide voter registration system in a timely fashion to include updated status information for persons not yet registered to vote or previously removed from the voting rolls. Thus, petitioners allege, election judges do not have the most current information on the eligibility of those who seek to vote in an election. Further, petitioners assert that permitting voter applicants to provide sworn statements to an election official, i.e., "self-certifying" eligibility to vote, effectively supersedes court orders that restrict the person's right to vote. Petitioners make similar arguments about the use of self-certification on election day with respect to people marked on the master voting list as challenged. The consequences of these allegedly wrongful acts and omissions were

present, petitioners contend, in past elections in which ineligible felons and wards have been allowed to register to vote and have voted.

By these wrongful acts and omissions, petitioners assert, election officials violate separation-of-powers principles by following statutory processes that have the effect of nullifying court orders. Petitioners also assert due process violations based on the claim that permitting an ineligible person to vote nullifies the vote of an eligible voter. Petitioners seek injunctive relief that would require election officials to comply with the relevant constitutional and statutory authorities that govern voter eligibility, as well as a declaration that election officials have violated the separation-of-powers doctrine and the Due Process Clause of the Minnesota Constitution.

Before proceeding to the merits of these arguments, we must decide whether the claims alleged fall within our original jurisdiction and, if they do, whether we must exercise that jurisdiction. Petitioners argue that respondents, as election officials, have a duty to enforce the constitutional and statutory restrictions on voter eligibility. By failing to do so, petitioners argue, respondents commit wrongful acts that we must address under Minn. Stat. § 204B.44.

Respondents, on the other hand, argue that petitioners do not seek to correct any errors pertaining to the preparation or printing of a ballot, but broadly challenge Minnesota's statutory systems for voter registration and eligibility. As petitioners' challenges are not focused on a specific ballot, the candidates for a particular office, or a specific election, respondents contend a "direct action" in this court is not proper.

8

Minnesota Statutes § 204B.44 authorizes proceedings before our court that seek to correct "errors, omissions, or wrongful acts" by election officials, particularly with respect to election ballots. *See Coleman v. Ritchie*, 762 N.W.2d 218, 231 n.13 (Minn. 2009) (stating the "principal purpose" of this statutory remedy "is to provide a mechanism for correcting errors alleged to have occurred before the election, such as . . . in preparing or printing the official ballot"). Ballot correction, however, is not the sole focus of the remedy provided by section 204B.44. Subsection (a)(4) permits a petition that seeks relief for "any wrongful act, omission, or error" by an election official or other individual "charged with any duty concerning an election." Minn. Stat. § 204B.44(a)(4); *see also Erlandson v. Kiffmeyer*, 659 N.W.2d 724, 729 (Minn. 2003) (describing former subsection (d) of the statute as a "catch-all" provision that addresses errors or omissions other than those on a ballot).

Despite the breadth of this language, we have not viewed the original jurisdiction provided by section 204B.44(a)(4) broadly. *See, e.g.*, *Begin v. Ritchie*, 836 N.W.2d 545, 549 (Minn. 2013) (dismissing a petition challenging the Secretary of State's de-certification of the Green Party as a minor political party because that decision did not "directly interfere" with the party's "right to present candidates for office in future elections"); *Minn. Majority v. Ritchie*, No. A09-0950, Order at 5-6 (Minn. filed July 22, 2009) (dismissing a petition that challenged election officials' alleged failure to post individual voting histories and change the status of registered voters in the statewide voter registration system in a timely manner, stating "[w]e do not understand section 204B.44(d)

9

to authorize claims and establish original jurisdiction in this court for any and all disputes concerning official conduct that relates to or may affect elections in general").

Petitioners argue that their petition properly invokes our original jurisdiction under section 204B.44(a)(4) because election officials have a duty to ensure that only eligible voters are permitted to vote in elections. The petition alleges that ineligible felons and wards have voted in prior elections, challenges the respondents' maintenance of information in the statewide voter registration system, and challenges the use of self-certification to determine voter eligibility on election day. Although they acknowledge election officials are following statutory procedures, petitioners allege these procedures violate the separation of powers and due process by wrongly allowing ineligible individuals to vote.

Voting in elections is a constitutional right, and Minnesota's election officials bear the solemn responsibility and duty to enforce the constitutional and legislative requirements for the exercise of that right. *See, e.g.*, *Kahn v. Griffin*, 701 N.W.2d 815, 832 (Minn. 2005) (recognizing that the right to vote is a fundamental constitutional right but "to maintain fair, honest, and orderly elections, states may impose regulations that in some measure burden the right to vote"). But the mere fact that the petition presents claims based on a fundamental constitutional right exercised in connection with elections, or a duty that is implemented in connection with elections, does not mean that we have exclusive jurisdiction over this dispute. Instead, we have considered whether the petition presents a challenge in the context of a *single specific election*, rather than a challenge to election policies generally. *See Minn. Majority*, No. A09-0950, Order at 1, 6 (concluding that the

duties the respondents were alleged to have breached, "while related to elections, d[id] not concern 'an' election").[6]

Petitioners contend that their claims are made in the context of a specific election, namely the vote on a proposed constitutional amendment at the November 2016 general election. That a constitutional-amendment question is included on the November 2016 ballot does not make this election different from all other elections in terms of the challenges petitioners bring. The challenges at issue in the petition relate to all of the matters on the November 2016 general election ballot, not simply the constitutional-amendment question. In fact, petitioners acknowledge that the procedures used to determine voter eligibility and registration that they challenge here have been enforced at previous elections that did not include a constitutional-amendment question.

Our analysis in *Minnesota Majority* suggests the conclusion that our original jurisdiction under section 204B.44 does not cover such broad-ranging challenges to the election process. *See Minn. Majority*, No. A09-0950, Order at 1, 5. But we need not resolve that question in this case, because even if we had original jurisdiction under section 204B.44, we would decline to exercise it in this case. *See State ex rel. Palmer v. Perpich*, 289 Minn. 149, 151, 182 N.W.2d 182, 184 (1971) ("Does this court have original

---

[6]    Some election disputes must be commenced in district court. *See, e.g.*, Minn. Stat. § 209.021, subd. 2 (2014) (requiring an election contest to be commenced in district court). Even with respect to voter eligibility, the Legislature prefers administrative, rather than judicial, processes to resolve voter eligibility challenges. *See* Minn. Stat. § 201.195 (2014) (permitting a pre-election-day challenge to voter registration or eligibility to be filed with the county auditor, with an appeal to the Secretary of State); Minn. Stat. § 204C.12 (authorizing election judges to resolve election-day challenges to voter registration and eligibility before a ballot is deposited in the ballot box).

jurisdiction to pass on matters affecting the senate's action in organizing itself, and if it has such jurisdiction, should the court assert it?"); *In re Lauritsen*, 99 Minn. 313, 321, 109 N.W. 404, 408 (1906) (explaining that "under every [judicial] system contingencies will arise which call for the peremptory and prompt relief which only a court of final resort can grant," but such instances are of "occasional necessity"). The broad-ranging challenges alleged here, which respondents dispute, should be addressed first in the district court, where any factual disputes can be fully litigated and resolved.

The original jurisdiction that section 204B.44(a)(4) confers on our court does not deprive the district court of its original jurisdiction to address a dispute that challenges election policies generally. *See, e.g.*, *Minn. Voters Alliance v. City of Minneapolis*, 766 N.W.2d 683, 685 (Minn. 2009) (noting that a declaratory judgment action challenging the implementation of instant runoff voting was resolved initially by the district court).[7] Nor can we conclude that the Legislature intended to deprive the district court of its general jurisdiction over challenges to legislation that might conflict with constitutional provisions. *See Rice v. Connolly*, 488 N.W.2d 241, 244 (Minn. 1992) (noting that complex issues of "public significance" in challenges to the constitutionality of legislation expanding licensing authority for Racing Commission required the district court to develop a record, "a function that an appellate court is ill-equipped to perform"); *Seventy-Seventh Minn. State*

---

[7] The challenge in *Minnesota Voters Alliance* was focused on voting procedures implemented for elections conducted in the City of Minneapolis. 766 N.W.2d at 685-86 (explaining the referendum process and ordinance implementing "instant runoff voting"); *see* Minn. Stat. § 204B.44(b) (requiring a petition "in the case of an election for . . . municipal . . . office" to be filed in the appropriate district court). Like this case, however, there were claims that alleged constitutional violations related to the right to vote.

12

*Senate v. Carlson*, 472 N.W.2d 99, 99 (Minn. 1991) (noting that "a substantial dispute as to the facts underlying the matter" requires resolution "by traditional means" in the district court, notwithstanding the "immediacy and significance of the substantive issue presented"); *Agin v. Heyward*, 6 Minn. 110, 118, 6 Gil. 53, 63 (1861) ("[T]he authority possessed by the Legislature to confer on other courts a portion of the jurisdiction vested by the constitution in the District Court does not imply the right to deprive the latter of such jurisdiction, but simply to authorize other courts to exercise it, concurrently with the District Court in such cases."). After all, the district court is "the one great court of general jurisdiction to which all may apply to have justice judicially administered, in every case where the Constitution itself does not direct application to be made elsewhere." *Agin*, 6 Minn. at 114, 6 Gil. at 57. We have deferred to the original jurisdiction of the district court even when a statute confers original jurisdiction on our court when the matter presents a dispute better suited in the first instance to resolution by the district court. *See, e.g.*, *State ex rel. Alexander v. Rigg*, 247 Minn. 110, 113, 76 N.W.2d 478, 480 (1956) (noting that although a statute conferred original jurisdiction on our court over a habeas petition, the Legislature had indicated a preference for initiating proceedings in the district court, and stating "our court is not equipped to take testimony and to examine witnesses in the proceedings that would be required by entertaining original writs of habeas corpus"); *cf. State ex rel. Grubbs v. Schulz*, 142 Minn. 112, 113-14, 171 N.W. 263, 264 (1919) (explaining that our court could "undoubtedly entertain original jurisdiction" over a petition requesting review of a decision to revoke a teaching certificate even though it has "been the practice of the court to remit the parties to the proper district court except in cases

where general public interest requires immediate determination," but deciding to exercise original jurisdiction "without intending to establish a precedent"). We likewise defer in this context as well.

There is, to be sure, significant public interest in ensuring the fairness and integrity of Minnesota's elections. *Wichelmann v. City of Glencoe*, 200 Minn. 62, 65, 273 N.W. 638, 639 (1937) ("In order to secure a full and complete expression of the popular will, it is necessary not only that all voters who are qualified be permitted to vote, but also that only those who are entitled to vote be permitted to do so . . . ."). The petition and the initial responses raise allegations about the administration of one of the most important rights and obligations of citizens. But the allegations of the petition do not demonstrate that proceedings in the district court, followed by appellate review if sought, will not suffice to protect this interest. Rather, the specific facts and circumstances of this case demonstrate that a district-court forum is available to petitioners and proceedings in that forum, followed by any needed appellate review, can provide an adequate remedy. There may be an occasion in which we must exercise our original jurisdiction over a challenge to the voter-registration and voter-eligibility duties of election officials. But we do not need to define that occasion with precision today. We conclude only that based on the facts and circumstances relevant to the claims asserted, an exercise of original jurisdiction over this petition is not warranted.

Petition dismissed.

McKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.