STATE OF MINNESOTA

IN SUPREME COURT

A25-0066
A25-0068

Original Jurisdiction

Per Curiam
Took no part, Procaccini, J.

Steve Simon, Minnesota Secretary of State,

    Petitioner,

vs.

Filed:  March 5, 2025
Office of Appellate Courts

Lisa Demuth,

    Respondent (A25-0066).

Melissa Hortman, et al.,

    Petitioners,

vs.

Lisa Demuth, Harry Niska, Paul Anderson,

    Respondents (A25-0068).

_____

Keith Ellison, Attorney General, Liz Kramer, Solicitor General, Peter J. Farrell, Deputy Solicitor General, Angela Behrens, Assistant Attorney General, Saint Paul, Minnesota, for petitioner Steve Simon, Minnesota Secretary of State.

David J. Zoll, Charles N. Nauen, Rachel A. Kitze Collins, Lockridge Grindal Nauen PLLP, Minneapolis, Minnesota, for petitioners Melissa Hortman, Jamie Long, and Athena Hollins.

Nicholas J. Nelson, Ryan D. Wilson, Samuel W. Diehl, Saint Paul, Minnesota, for respondents Lisa Demuth, Harry Niska, and Paul Anderson.

1

James V. F. Dickey, Douglas P. Seaton, Alexandra K. Howell, Upper Midwest Law Center, Minnetonka, Minnesota, for amici curiae Professor Ilan Wurman, Minnesota Gun Owners Caucus, Center of the American Experiment, TakeCharge, and Minnesota Voters Alliance.

_____

S Y L L A B U S

The quorum clause in Article IV, Section 13, of the Minnesota Constitution requires a majority of the total number of seats of which each house may consist to constitute a quorum.

O P I N I O N

PER CURIAM.

Two petitions for a writ of quo warranto were filed against certain members of the Minnesota House of Representatives (House), both claiming that at the start of the legislative session, on January 14, 2025 (and continuing as of the day we issued our January 24, 2025 order deciding this case), the House did not have a quorum to transact business. Secretary of State Steve Simon, who by statute has certain responsibilities in the House at the start of the legislative session, brought one of the petitions. Representatives Melissa Hortman, Jamie Long, and Athena Hollins brought the other petition. In a January 24, 2025 order with opinion to follow, we consolidated the cases and determined that the petition of Secretary of State Simon was justiciable, resulting in us not needing to address justiciability related to Representatives Hortman, Long, and Hollins. We held that the quorum clause in Article IV, Section 13, of the Minnesota Constitution requires a

2

majority of the total number of seats of which each house may consist to constitute a quorum. Because under current statute, the total number of seats in the Minnesota House of Representatives is 134, a quorum under Article IV, Section 13, is 68 members. We also assumed that the parties would conform to this order without the necessity of issuing a formal writ. This opinion explains the reasons for our decision.

## FACTS

By statute, "the house of representatives is composed of 134 members." Minn. Stat. § 2.021 (2024). In the general election held on November 5, 2024, Minnesota voters elected an equal number of representatives—67—from each of the state's two major political parties, the Republican Party of Minnesota and the Democratic-Farmer-Labor Party (DFL). In a subsequent election contest brought under Minn. Stat. §§ 209.02, 209.10 (2024), a district court concluded that the person elected to represent House District 40B, a DFL member, did not meet the residency requirement to serve as the representative for that district.

At the start of the legislative session on January 14, 2025, consistent with long-standing tradition and statute, Secretary of State Steve Simon called the House to order. All 67 members of the Republican Party were present in the House chamber, while none of the members of the DFL were present. Secretary of State Simon determined that, with 67 members present, the House lacked a quorum and could not elect a speaker, and he adjourned the meeting. The members who were present took the position that a quorum did exist and purported to take action, including electing Representative Lisa Demuth as Speaker of the House.

3

That same evening, Secretary of State Simon and DFL Representatives Melissa Hortman, Jamie Long, and Athena Hollins (representatives who were not present in the House chamber that day) brought two separate petitions for a writ of quo warranto against Representative Demuth. The petition filed by Representatives Hortman, Long, and Hollins also named Representatives Harry Niska and Paul Anderson as respondents. Both petitions asked this court to decide what constitutes a quorum in the House and rule on the lawfulness and validity of the actions taken by Secretary of State Simon and the members of the House that were present, including Representatives Demuth, Harry Niska, and Paul Anderson. Representative Demuth and the other respondents disagreed with petitioners on the merits but argued in the first instance that the petitions are nonjusticiable.

**ANALYSIS**

The quorum clause in Article IV, Section 13, of the Minnesota Constitution provides that "[a] majority of each house constitutes a quorum to transact business."[1] The primary issue before us is whether, under the quorum clause, "[a] majority of each house" to constitute a quorum requires a majority of the total seats in the House or a majority of the total current legislators (such that vacant seats are not counted). Before reaching the merits of this issue, we must address issues related to our jurisdiction to hear the claims.[2]

---

[1] The full text of Article IV, Section 13, of the Minnesota Constitution states: "A majority of each house constitutes a quorum to transact business, but a smaller number may adjourn from day to day and compel the attendance of absent members in the manner and under penalties it may provide."

[2] We have "original jurisdiction in such remedial cases as are prescribed by law." Minn. Const. art. VI, § 2. Pursuant to Minn. Stat. § 480.04 (2024), we have the authority to issue a writ of quo warranto to "all . . . individuals." In exercising our original

4

A.

"The presence of a justiciable controversy is 'essential to our exercise of jurisdiction.'" *Cruz-Guzman v. State*, 916 N.W.2d 1, 7 (Minn. 2018) (quoting *Bicking v. City of Minneapolis*, 891 N.W.2d 304, 308 (Minn. 2017)). Here, respondents challenge the justiciability of both petitions. Respondents further argue that if there is jurisdiction, we should not exercise that jurisdiction because petitioners allegedly have "unclean hands." For the reasons discussed below, we conclude that Secretary of State Simon's petition is justiciable for purposes of determining the meaning of the quorum clause in the Minnesota Constitution and decline to apply the doctrine of unclean hands.

1.

We turn first to respondents' argument that the petitions present nonjusticiable questions about the Legislature's internal operations. "We have long recognized that where the constitution commits a matter to one branch of government, the constitution prohibits the other branches from invading that sphere or interfering with the coordinate branch's exercise of its authority."[3] *In re Giem*, 742 N.W.2d 422, 429 (Minn. 2007); *see also State*

---

jurisdiction and hearing these cases, we reaffirm what we said more than 30 years ago regarding quo warranto jurisdiction: "petitions for the writ of quo warranto and information in the nature of quo warranto shall be filed in the first instance in the district court." *Rice v. Connolly*, 488 N.W.2d 241, 244 (Minn. 1992). Although we have original jurisdiction to consider petitions for a writ of quo warranto, we will "exercise that discretion in only the most exigent of circumstances." *Id.* This is one of those cases.

[3]    We have identified the "constitutional separation of authority" as being contained in Article III, Section 1, of the Minnesota Constitution. *State ex rel. Decker v. Montague*, 262 N.W. 684, 689 (Minn. 1935). It provides:

*ex rel. Birkeland v. Christianson*, 229 N.W. 313, 314 (Minn. 1930) (explaining that no branch of government "can control, coerce, or restrain the action or nonaction of either of the others in the exercise of any official power or duty conferred by the Constitution"). The Minnesota Constitution gives the Legislature certain power to regulate its internal affairs. *E.g.*, Minn. Const. art. IV, §§ 7, 15 (giving each house the power to "determine the rules of its proceedings, sit upon its own adjournment," and "elect its presiding officer and other officers"). We have acknowledged that "the thread that separates judicial power from legislative prerogative is an exceedingly thin one." *State ex rel. Palmer v. Perpich*, 182 N.W.2d 182, 184 (Minn. 1971). And we are "wary of unnecessary judicial interference in the political process." *Ninetieth Minn. State Senate v. Dayton*, 903 N.W.2d 609, 625 (Minn. 2017).

This, however, is not strictly a matter about "the Legislature's internal decisions about how to organize itself," as respondents maintain. The Secretary of State—who has brought one of the petitions—is a constitutional officer in the executive branch. Minn. Const. art. V, § 1. And by statute, the Legislature has given the Secretary of State the role of calling the House to order at the beginning of the legislative session and presiding until

---

The powers of government shall be divided into three district departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution.

Minn. Const. art. III, § 1.

6

a speaker is elected. Minn. Stat. §§ 3.05, 5.05 (2024).[4] We have previously concluded—with respect to the Lieutenant Governor's similar responsibilities in the Senate under Minn. Stat. § 3.05—that "we do have power to determine whether the lieutenant governor in presiding over the senate acted in accordance with the powers granted to him by the Constitution." *Palmer*, 182 N.W.2d at 185. In that case we also confirmed that "quo warranto is a proper proceeding to determine whether a branch of the legislature has been organized according to the Constitution." *Id.* at 184.

We reach the same conclusion here as to the justiciability of Secretary of State Simon's petition for a writ of quo warranto.[5] The primary issue raised in Secretary of State Simon's petition—whether the House has been organized according to the constitution's quorum clause requirement—is an issue properly before this court. "It is emphatically the

---

[4]      Minnesota Statutes section 3.05 provides, in full:

> At noon of the day appointed for convening the legislature, the members shall meet in their respective chambers. The lieutenant governor shall call the senate to order and the secretary of state, the house of representatives. In the absence of either officer, the oldest member present shall act in the officer's place. The person so acting shall appoint, from the members present, a clerk pro tem, who shall call the legislative districts in the order of their numbers. As each is called, the persons claiming to be members from each shall present their certificates to be filed. All whose certificates are so presented shall then stand and be sworn.

*Id.* Minnesota Statutes section 5.05 states, in full: "The secretary of state shall attend at the beginning of each legislative session, to call the members of the house of representatives to order and to preside until a speaker is elected."

[5]      So long as Secretary of State Simon's petition is justiciable, we have no need to decide the justiciability of the other petition brought by Representatives Hortman, Long, and Hollins in order to address the quorum clause question raised in both petitions.

7

province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), *quoted in Cruz-Guzman*, 916 N.W.2d at 9. The judiciary can "rule on the Legislature's noncompliance with a constitutional mandate," *Cruz-Guzman*, 916 N.W.2d at 9, especially in as much as "the interpretation of the constitution's language is a judicial, not a legislative, question," *id.* at 10 (quoting *Schowalter v. State*, 822 N.W.2d 292, 301 (Minn. 2012)). It is thus appropriate for us to determine the meaning of the quorum clause in the Minnesota Constitution.

2.

We also conclude that Secretary of State Simon has standing. "In Minnesota, a party has standing if it has suffered an injury-in-fact," which requires "a concrete and particularized invasion of a legally protected interest." *Minn. Sands, LLC v. County of Winona*, 940 N.W.2d 183, 192 (Minn. 2020) (citations omitted) (internal quotation marks omitted). Here, Minn. Stat. § 5.05 gives specific duties to the Secretary of State with respect to the Legislature: "The secretary of state shall attend at the beginning of each legislative session, to call the members of the house of representatives to order and to preside until a speaker is elected." Secretary of State Simon claims that with members of the House having taken the position they had a quorum and elected Representative Demuth speaker, he has standing to ask this court to determine whether he still holds the role that the law confers. Respondents argue that any claim by Secretary of State Simon as to his right to preside over the House is not a "legally protected interest" because it is a "purely ceremonial" role and not one vested with the secretary of state by the Minnesota Constitution. We disagree with respondents. Nothing in the statute suggests the Secretary

8

of State's duty is purely ceremonial, and respondents' assertion is otherwise unsupported. Because Minn. Stat. § 5.05 mandates that the Secretary of State shall preside until a speaker is elected, and Secretary of State Simon alleges that respondents' actions have impaired his ability to perform that duty, he has standing.[6]

3.

Lastly, respondents invoke the principle of "unclean hands" as a basis for this court declining to exercise jurisdiction. "The doctrine of 'unclean hands' bars a party who acted inequitably from obtaining equitable relief." *Heidbreder v. Carton*, 645 N.W.2d 355, 371 (Minn. 2002). We have not previously applied the doctrine of unclean hands to a petition for a writ of quo warranto, which is "an extraordinary legal remedy." *State ex rel. Burnquist v. Village of North Pole*, 6 N.W.2d 458, 460 (Minn. 1942). But we have said, with respect to a writ of mandamus, that "an applicant for such writ, who has unclean hands, . . . may be rejected." *State ex rel. Erickson v. Magie*, 235 N.W. 526, 526 (Minn. 1931). Here, assuming without deciding that the doctrine of unclean hands applies to the extraordinary legal remedy sought in a quo warranto proceeding, we decline to apply the doctrine to Secretary of State Simon's petition. Respondents' arguments pertain to the authority Secretary of State Simon purported to exercise when presiding over the House. But respondents have not shown that Secretary of State Simon acted inequitably by his exercise of that authority. To the contrary, Secretary of State Simon had a clear right, under

---

[6] For the same reasons noted in the last section, because Secretary of State Simon has standing and his claim is justiciable, we do not need to determine the standing of Representatives Hortman, Long, and Hollins in raising the same claim.

9

Minn. Stat. § 5.05, "to preside until a speaker is elected." *Cf. State ex rel. Floren v. Displayograph Co.*, 160 N.W. 486, 487 (Minn. 1916) (rejecting unclean hands where "[r]elator had a clear right, as a stockholder in the corporation, to inspect its books and records"). And Minn. Stat. § 3.06, subd. 1 (2024), provides that "if a quorum is present," the House "shall elect a speaker." Thus, assuming without deciding that the doctrine of unclean hands may apply to a petition for a writ quo warranto, we decline to apply it to Secretary of State Simon's petition in addressing the threshold and primary question as to the quorum clause's meaning.[7]

*     *     *

We thus conclude that Secretary of State Simon's petition is justiciable and that the doctrine of unclean hands does not apply to his petition. Having resolved these issues, we turn next to the question raised by that petition as to the meaning of the quorum clause in the Minnesota Constitution.

B.

The quorum clause in the Minnesota Constitution provides that "[a] majority of each house constitutes a quorum to transact business." Minn. Const. art. IV, § 13. The parties dispute the number used to determine if there is a majority. Secretary of State Simon contends it is the total number of possible seats in each house, while respondents claim it

---

[7] For the same reasons previously noted, because we conclude that the doctrine of unclean hands does not apply to Secretary of State Simon, we have no need to address respondents' invocation of the doctrine as to Representatives Hortman, Long, and Hollins.

10

is the total number of current legislators. In other words, the question is whether vacancies reduce the number required for a majority of each house to constitute a quorum.

This is a question of constitutional interpretation. The starting point for our construction of the Minnesota Constitution is the same as for the construction of statutes: "we start with the text itself." *Schroeder v. Simon*, 985 N.W.2d 529, 536 (Minn. 2023); *see also Schowalter v. State*, 822 N.W.2d 292, 300 (Minn. 2012). "When the text of the constitution is clear, we go no further and 'there is no room for the application of rules of construction.' " *Schroeder*, 985 N.W.2d at 536 (quoting *Kernan v. Holm*, 34 N.W.2d 327, 329 (Minn. 1948)). Nor in examining the text do we limit ourselves narrowly to the specific clause at issue. Rather, "[t]he entire article is to be construed as a whole, [and] receive a practical, common sense construction." *State ex rel. Chase v. Babcock*, 220 N.W. 408, 410 (Minn. 1928); *accord State v. Harris*, 667 N.W.2d 911, 917 (Minn. 2003).

1.

Here, the focus is on what is meant by the requirement that "[a] majority of *each house* constitutes a quorum" under the quorum clause. Minn. Const. art. IV, § 13 (emphasis added). The number of members in each house is specifically addressed by Article IV, Section 2, which provides that "[t]he number of members who compose the senate and house of representatives shall be prescribed by law." And by law, under Minn. Stat. § 2.021, "the house of representatives is composed of 134 members."[8]

---

[8]     Minnesota Statutes section 2.021 provides, in full: "For each legislature, until a new apportionment shall have been made, the senate is composed of 67 members and the house of representatives is composed of 134 members."

11

This construction is simple, straightforward, and clear. The majority required of "each house" to constitute a quorum under Article IV, Section 13, of the Minnesota Constitution, is a majority of the "number of members who compose . . . the house of representatives" as "prescribed by law," Minn. Const. art. IV, § 2, which is currently 134 members, Minn. Stat. § 2.021. These provisions do not refer to vacancies when establishing what number of members constitutes a quorum. Instead, the number of members in the House is currently prescribed by law as being fixed at 134. Accordingly, based on the current total number of seats prescribed by law, a quorum in the Minnesota House of Representatives under Article IV, Section 13, of the Minnesota Constitution is 68 members.

2.

Respondents ask us to look past this clear, straightforward meaning, arguing that when the Minnesota Constitution intends to refer to *all* the seats in the legislative body, both filled and vacant, it does so by reference to the "members *elected*" to the body. *See* Minn. Const. art. IV, § 22, art. IV, § 23, art. IX, § 1, art. IX, § 2. Respondents thus argue that, because the quorum clause refers to a majority of "each house," rather than a majority of the "members elected to each house" as appears elsewhere in the Minnesota Constitution, the quorum clause must refer to only a majority of the House's current members.

As an initial matter, it is not plain from the text that a reference to "members elected" would *include* all vacancies in the count rather than *exclude* them. Tellingly, respondents do not make a strict, plain meaning argument; rather, they cite to various cases which they

claim have interpreted "members elected" as referring to the seats in the body, including vacant ones. But the authorities from this court that respondents rely upon are readily distinguishable—the phrase "members elected" has only been discussed in the context of city councils, not the Minnesota Constitution, and never in the context of a quorum requirement. *See, e.g., State ex rel. Peterson v. Hoppe*, 260 N.W. 215, 217, 220 (Minn. 1935) (holding that the provision in the Minneapolis City Charter requiring "the affirmative vote of a majority of all members" for an appointment to be valid meant that the "majority should be computed upon the basis of membership as it exists after the vacancy, not upon the total number elected in the first instance"); *Ram Dev. Co. v. Shaw*, 244 N.W.2d 110, 113–14 (Minn. 1976) (citing *Peterson* as "persuasive evidence of this court's position that all members means all current members whether present or absent, voting or not," in applying a statute providing that a city council "may adopt and amend a zoning ordinance by a two-thirds vote of all its members"). And even respondents acknowledge that "members elected" may have a meaning that is fewer than the total number of possible seats, noting that "other jurisdictions and commentators . . . have asked whether a vacant seat counts as a 'member elected' if the election winner never became a 'member' because he was ineligible, or died before her term began, or never was sworn in for whatever other reason." This concession undermines the very linchpin of respondents' argument.[9]

---

[9] The primary case respondents cite likewise left unanswered this very gap as to whether "members elected" in the context of that case would also include those who never became a member in the first place. *See Peterson*, 260 N.W. at 217 (stating only that where "the vote of two-thirds of the members *elected* to the common council shall be necessary

Most significantly, even if "members elected" has the meaning ascribed to it by respondents, it does not necessarily follow that the reference to "each house" in the quorum clause in Article IV, Section 13, must mean something different than a reference to the total number of seats in the House prescribed by law, which is currently 134. Notably, respondents offer no meaningful argument as to what the phrase "each house" as used in the quorum clause affirmatively means. Instead, their interpretation hinges on the purported meaning of "members elected" and the presumption that "if the Constitution's authors used two different words, they intended two different meanings." *Torgelson v. Real Prop. Known as 17138 880th Ave.*, 749 N.W.2d 24, 27 (Minn. 2008). But "this canon of interpretation 'readily yields to context.' " *Glen Edin of Edinburgh Ass'n v. Hiscox Ins. Co.*, 992 N.W.2d 393, 398 (Minn. 2023) (quoting *State v. Thompson*, 950 N.W.2d 65, 70 (Minn. 2020)). The surrounding context here requires this canon to yield.

The relevant context here is the language in the cases upon which respondents rely. In those cases, the difference in meaning was drawn between references to "members" and "members elected." *See Ram Dev.*, 244 N.W.2d at 114 (observing that it could be that "all *members* means all *current* members whether present or absent, voting or not" (emphases added)); *Peterson*, 260 N.W. at 217–18 (construing requirement for "the affirmative vote of a majority of all *members* of the City Council," and recognizing that there are authorities that "distinguish between the phrase 'all *members*' (or phrases of similar import) and those

_____

to pass an ordinance of a certain character the fact that there are vacancies *in office* due to death or resignation does not diminish the number of votes necessary to pass the ordinance" (second emphasis added) (citation omitted) (internal quotation marks omitted)).

14

wherein the phrase 'all the members *elected*' is used" (emphases added)); *id.* at 221 (Devaney, C.J., dissenting) ("An attempted distinction between the phrase 'all members' and the phrase 'all members elected' is subtle and not well founded."). The difference in meaning was *not* primarily drawn between references to "members elected" to the body and a reference to the body on its own. Thus, whatever "members elected" means, it does not invariably follow that the reference to "each house" in the quorum clause must mean something different. And it certainly does not compel that the reference to "each house" in the quorum clause must be a reference to only the current members of the House, rather than the 134 total seats in that chamber currently prescribed by law.

In considering context, we are also mindful of the requirement that the "entire article"—which here is Article IV governing the Legislature—"is to be construed as a whole, [and] receive a practical, common sense construction." *Chase*, 220 N.W. at 410. Certainly, there is a textual difference between the requirement for "[a] majority of each house" to constitute a quorum to transact business in Article IV, Section 13, and the requirement that "[n]o law shall be passed unless voted for by a majority of all the members elected to each house of the legislature" in Article IV, Section 22. But this difference has been used to highlight only that once a quorum is established, more is required to pass a law—or override a veto—than just a majority or two-thirds of the quorum. *See State ex rel. Eastland v. Gould*, 17 N.W. 276, 277–78 (Minn. 1883); *Mo. Pac. Ry. Co. v. Kansas*, 248 U.S. 276, 284–85 (1919) (distinguishing *Eastland* on this basis). It has never been held that a reference to "the house" in the Minnesota Constitution, on its own, must invariably mean something different than "members elected to each house." *Cf. State ex*

15

*rel. Kohlman v. Wagner*, 153 N.W. 749, 750 (Minn. 1915) (following *Eastland* and concluding that " 'two-thirds of the house,' as used in section 20 [of the Minnesota Constitution], means two-thirds of the whole membership of the house, and not two-thirds of a quorum of the house").[10]

Respondents' argument for a rigid, across-the-board distinction in meaning between references to "each house" and "members elected to each house" also fails when considered against Article IV, Section 23, of the Minnesota Constitution, regarding veto overrides. Section 23 generally permits a veto to be overridden if "two-thirds of that house" in which the bill originated and "two-thirds of that house" to which the bill is sent next agree to pass the bill upon reconsideration. Minn. Const. art. IV, § 23. Farther on in Section 23, when referring to a line-item veto regarding an appropriation of money, it states the veto is overridden if "approved by two-thirds of the members elected to each house." *Id*. Respondents have not offered any meaningful argument as to why these two veto provisions—which have the same textual distinction respondents rely upon here—should have a different meaning. Instead, in *Eastland*, we spoke to both line-item appropriation vetoes and more general veto overrides as having the same meaning, in that neither can require "a mere two-thirds of a quorum."[11] *Eastland*, 17 N.W. at 277.

---

[10]     The constitutional provision at issue in *Wagner* provided: "Every bill shall be read on three different days in each separate House, unless in case of urgency, two-thirds of the House where such bill is depending, shall deem it expedient to dispense with this rule . . . ." Minn. Const. of 1857, art. IV, § 20.

[11]     This textual distinction with respect to the Legislature's veto override, both generally and as to line-item appropriations, also existed at the time they were addressed in *Eastland*. *See Eastland*, 17 N.W. at 276 ("If, upon reconsideration of a bill returned by

16

We have no need here to further define precisely what the references to "members elected to each house" mean in the Minnesota Constitution. It is sufficient for our purposes here that references to "members elected to each house" elsewhere in the Minnesota Constitution do not compel that the reference to "each house" in the quorum clause must invariably have the meaning respondents ascribe to it.

\* \* \*

The quorum clause's requirement that "[a] majority of *each house* constitutes a quorum to transact business" in Article IV, Section 13 (emphasis added), is a reference to the "number of members who compose the senate and house of representatives" under Article IV, Section 2, and is "prescribed by law." Current law, under Minn. Stat. § 2.021, prescribes that "the house of representatives is composed of 134 members." Thus, under Article IV, Section 13, of the Minnesota Constitution, a quorum requires a majority of the total number of seats for each house, which by statute is currently 134 seats for the House of Representatives. Accordingly, based on the current total number of seats prescribed by law, a quorum in the Minnesota House of Representatives under Article IV, Section 13, of the Minnesota Constitution is 68 members.

Our resolution as to the meaning of the Minnesota Constitution's quorum clause should be sufficient to resolve the issues raised by the petitions. "We assume that the

the governor, 'two–thirds of that house' in which it originated agree to pass it, it is to be sent to the other house, and if approved 'by two–thirds' of that house it shall become a law. Article 4, § 11. If, upon reconsideration of an appropriation bill, one or more items thereof objected to by the governor are 'approved by two–thirds of the members elected to each house,' the same shall become part of the law. *Id*.").

17

parties will now conform to this opinion without the necessity of issuing a formal writ."

*Palmer*, 182 N.W.2d at 186.

## CONCLUSION

For the foregoing reasons, we hold that the quorum clause in Article IV, Section 13, of the Minnesota Constitution requires a majority of the total number of seats of which each house may consist to constitute a quorum, and we assume that the parties will now conform to this opinion without the necessity of issuing a formal writ.

PROCACCINI, J., took no part in the consideration or decision of this case.